IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF INDIANA,

AT *CORYDON*, MAY TERM, 1822, IN THE SIXTH YEAR OF THE STATE:

---

## HENTHORN *v.* DOE, on the Demise of Shepherd.

A notice given on *Saturday* afternoon, of taking depositions in another state on the *Monday* following, is insufficient.

The exemplification of a statute under the seal of state, is admissible evidence under the act of congress of 1790, without the attestation of any public officer.

Semble, that to make the certified copy of a record of a public office, not appertaining to a Court, admissible evidence in another state, under the act of congress of 1804, the certificate of the proper officer must state the attestation of the keeper of the records or books to be *in due form*.

The claims of *Virginia*, before the year 1783, to the territory north-west of the *Ohio*; her cession of it in that year to the *United States*, reserving a tract granted by her to the *Illinois* regiment to be divided among the officers and soldiers thereof according to the laws of *Virginia*; and her statutes respecting the primary disposal of the soil within this reservation, now known by the name of the *Illinois* Grant; constitute a part of the history and laws of our state, which are to be noticed by our Courts without any special proof.

The patent, authorized by the statute of *Virginia* of 1783 to be made to the commissioners for the benefit of the *Illinois* regiment, having been acted upon, and deeds executed by the commissioners to the claimants, from time to time, for upwards of 30 years, (which proceedings are a part of the history of the country,) furnish ground for the strongest presumption that the patent was duly executed.

The *Virginia* statute of 1796, expressly recognizing the proceedings of the commissioners prior to that time relative to the *Illinois* Grant, is sufficient evidence of the previous transfer of title by that state to the commissioners in conformity with her laws.

A deed of conveyance more than 30 years old, unaccompanied by any suspicious circumstances, requires no proof; and a deed may be valid without being recorded, except as to subsequent purchasers without notice.

MAY Term, 1822.

HENTHORN
v.
DOE.

If the execution of a deed by the commissioners of the *Illinois* Grant be conformable to the laws of *Virginia*, it is sufficient.

A right of entry is not taken away by an adverse possession of 20 years, unless by virtue of a statute of limitations.

If, to prove a written instrument, a deposition be admitted without a sufficient notice of taking it having been given, it is not error; provided the instrument from its antiquity or from some other cause requires no proof.

Tuesday,
May 7.

APPEAL from the *Clark* Circuit Court.—The verdict and judgment in this case were in favour of the appellee, who was the plaintiff below.

SCOTT, J.—*Shepherd* brought ejectment in the *Clark* Circuit Court against *Henthorn* for a tract of land in the *Illinois* Grant. To support his action, he produced a transcript of the acts of assembly of *Virginia* of 1783 and 1786, attested by *William Munford*, keeper of the rolls, under his hand, (there being no seal of office;) in addition to which is the certificate of the governor of *Virginia*, with the great seal of the state annexed. These acts of assembly were produced for the purpose of showing the authority of the board of commissioners, appointed by the government of *Virginia*, to convey to the rightful claimants the lands granted to the officers and soldiers of the *Illinois* regiment. The plaintiff also produced a document, purporting to be a transcript of a patent from the state of *Virginia* to the said commissioners, made in pursuance of the said acts of assembly, signed by *Edmond Randolph*, governor, with the lesser seal of the state, and dated the 14th of *December*, 1786. This transcript is attested by *William G. Pendleton*, register of the land-office, with his seal of office thereto affixed; to which is added the certificate of *Thomas M. Randolph*, governor of the state of *Virginia*, with the great seal of the state annexed, certifying that *William G. Pendleton* is register of the land-office, but omitting to state that his attestation is *in due form*. These documents were severally objected to by the counsel for the defendant, but were admitted by the Court. The plaintiff also offered in evidence a deed from the commissioners for the land in question; which deed was objected to, because it did not appear to have been recorded pursuant to the ordinance of congress of 1787; but the Court overruled the objection, and permitted the deed to go to the jury. The deposition of *Robert Breckenridge* was offered by the plaintiff, and opposed by the defendant; but the Court overruled the objection, and the deposition was used.

The admission of *Breckenridge's* deposition is the first error

assigned on the record.  The deposition was taken in *Louis-*
*ville,* in the state of *Kentucky,* on *Monday* the 23d of *April,* in
pursuance of a notice given in *Charlestown,* in the state of *In-*
*diana,* on *Saturday* the 21st, at 5 o'clock in the evening.  With-
out taking into consideration the impropriety of one party's lay-
ing the other under the necessity of travelling on the *Sabbath,* we
think the notice in this case clearly insufficient. It is not reason-
able to presume, that a man can at all times hold himself in rea-
diness to answer the calls of his adversary to go, at a few hours'
notice, to a neighbouring state.   And even if he had no other
preparation to make, it is necessary that the counsel should
have time to confer with his client, or the client to con-
sult his counsel, in order to cross-examine the witness with
propriety.   We think, therefore, the deposition ought not to
have been received.   We will now consider the case as en-
tirely divested of every circumstance connected with this depo-
sition, and every fact which the deposition conduced to prove.
The only possible objects to be effected by this evidence, were,
to establish the authenticity of a document, purporting to be a
transcript of the same patent which is certified from the state
of *Virginia;* and to prove the execution of the deed from the
commissioners to *Shepherd.*   The exemplifications of the sta-
tutes of *Virginia,* offered in evidence, were sufficiently authen-
ticated.   The act of congress of 1790 provides, that the acts of
the legislatures of the several states shall be authenticated by
having the seal of their respective states affixed thereto.  The act
does not require the attestation of any officer: the great seal of
the state is itself a sufficient test of authenticity.  The transcripts
offered in this case have all the evidence required by the act of
congress.   The attestation of the keeper of the rolls, and the
certificate of the governor, do not destroy the credit of the state
seal.   The Court therefore acted correctly in receiving them
(1).   The patent requires a different kind of authentication.
The act of 1790 respects only acts of the legislature, and the re-
cords and judicial proceedings of Courts.   This is neither an
act of the legislature, nor a record of a Court.   It is not includ-
ed in the provisions of the act of 1790.   But it is a record of a
public office not appertaining to a Court; and the authentica-
tion should be in conformity to the act of congress of 1804.
This act provides, that records and exemplifications of this na-
ture shall be proved or admitted in any other Court or office in

May Term, any other state, by the attestation of the keeper of the said re-
1822.   cords or books, and the seal of his office thereto annexed if
――――――   there be a seal, together with a certificate of the presiding jus-
HENTHORN   tice of the Court of the county or district as the case may be, in
v.   which such office is or may be kept, or of the governor, the se-
DOE.   cretary of state, the chancellor or keeper of the great seal of the
state, that the said attestation is *in due form* and by the proper
officer, &c.   In the case under consideration, the governor has
not certified that the attestation is *in due form:* in all other res-
pects the authentication is in strict conformity to the act of con-
gress.   It may be doubted whether such an omission in the go-
vernor's certificate should be considered a fatal defect; and it is
questionable, whether such a rigid adherence to matters of
form where we are in possession of the substance, might not
trammel rather than facilitate the due administration of justice.
The current of decisions, however, is in favour of an adherence
to the rules prescribed by the act of congress; 1 Johns. Cas.
238,―1 Hayw. 395,―3 Bibb, 369,―4 Bibb, 424, 526 (2); un-
less where there is a municipal regulation of the state where the
evidence is offered, relaxing or varying the rule.   1 Cranch, 1.
―4 Bibb, 516, 521.

Leaving this point undecided for the present, there is another
view of the subject which may perhaps obviate the difficulty.
Prior to the year 1783, the state of *Virginia* had the sovereignty
of all the territory now included in the states of *Ohio, Indiana,*
and *Illinois.*   By her act of cession to the *United States* in 1783,
and her deed in conformity thereto, she transferred all her ter-
ritory north-west of the *Ohio* river, saving and excepting certain
reserves.   Among others, she reserved a tract granted by her
to the officers and soldiers of the *Illinois* regiment, containing
150,000 acres, now known by the name of the *Illinois* Grant,
with the express stipulation that the said tract should be divid-
ed among the said officers and soldiers in due proportion, accord-
ing to the laws of *Virginia.*   The power of legislation may cease,
and the operation and obligation of the laws remain: such is
the case generally in conquered and ceded countries; such is
the case in all the new states of this union. 4 Cranch, 384. But
the compact, in this case, seems to intend something more than
a stipulation for a continuance of the operation of laws already
in existence.   The state of *Virginia* and the *United States* were
two sovereigns, treating for a cession of territory.   *Virginia* had

made a grant of land to the officers and soldiers of the *Illinois* regiment for military services.   In her act of cession she re. serves this grant, and stipulates for a continuance of her right of legislation, so far as it should be found necessary to carry it into complete effect.   That this was the light in which the com- pact was understood by the contracting parties, appears evident not only from the compact itself, but also from the subsequent conduct of both parties.   The right of soil remained in *Virgi- nia.*   *Virginia* claimed the right of legislation long after this compact, and did actually legislate on the subject of these lands in the years 1786 and 1796.   The *United States* acquiesced in the right claimed and exercised by *Virginia.*   Congress has ne- ver attempted to make any regulation respecting the lands in this grant; nor have the *United States,* in any instance, claimed the right to legislate on the subject, or in any manner to inter- fere with *Virginia* respecting the primary disposal of the soil. If this is a fair construction of the compact, *Virginia* retained and still retains the sole and exclusive right of legislation, so far as respects the transfer from the government to individual claim- ants of the legal title to lands in the *Illinois* Grant; and, with *respect to these lands, the acts of the general assembly of Virgi- nia* have the same force and authority, as the acts of con- gress have with respect to the other lands in these states.   As respects the primary disposal of the soil, *Virginia* has a right to legislate for one part of the state, and the *United States* for the other part.   The acts of both are equally obligatory, and are presumed to be equally within the knowledge of our Courts and judges, as forming a part of the law of the land.   The Court had a right, therefore, to avail themselves of the printed statutes of *Virginia,* in the same manner as of the acts of congress; and to instruct the jury accordingly.   It has been decided by the Supreme Court of *Pennsylvania,* that the printed statute book of *Virginia* was sufficient prima facie evidence of the law in a Court of that state.   1 Dall. 458.   The present is a much stronger case.   The laws and transactions here alluded to are rules and facts of universal notoriety: such as necessarily connect them- selves with, and form a part of, the history and laws of our own state; with which every judge ought to be acquainted, and of which our Courts ought to take notice without particular evi- dence.   How then does this affect the evidence of the patent to the commissioners? The answer is plain.   From the length

21

of time since, agreeably to the act of assembly, the patent ought to have issued, and from the antiquity of the date of that which was offered in evidence, its existence ought to have been presumed. Phil. Ev. 119. The history of the whole case is in favour of such a presumption. But to remove all doubt as to this fact, the Court had only to notice the statute of *Virginia* of the 2d of *December*, 1796, which expressly recognizes the proceedings of the commissioners prior to that time, which could not have been had without a patent from the government; and authorizes a smaller number of commissioners to execute deeds to all claimants applying for the same, being governed by the same principles and opinions which had governed them in their proceedings under the former laws. From this view of the case we conclude, that an exemplification from the office was unnecessary; and whether it be sufficiently authenticated or not, is entirely immaterial: and the deposition of *Breckenridge*, so far as relates to that matter, was wholly useless and unimportant. The only further object of the deposition, was to prove the execution of the commissioners' deed to *Shepherd*. The action was commenced in *January*, 1820; and the deed offered in evidence bears date the first of *September*, 1789, more than 30 years prior to the commencement of the action. Where a deed is more than 30 years old, and attended with no suspicious circumstances, it requires no proof. This rule of law is so well established, that if the subscribing witnesses were known to be alive, and within the jurisdiction of the Court, it would be unnecessary to call them. Phil. Ev. 349, 350, and authorities there cited. Evidence to this point was altogether superfluous and useless (3).

The second error assigned questions the propriety of permitting the deed from the commissioners to *Shepherd* to be read to the jury; the said deed not having been acknowledged and recorded agreeably to the provisions of the ordinance of congress of 1787. The legal title to the land was vested in *Shepherd* by the execution of the deed agreeably to the laws of *Virginia*, and did not depend on any act of congress for its validity. The design of recording a deed is not to vest a title in the grantee; and a neglect on his part to have it recorded, does not destroy or make void a title once vested. Its design is to perpetuate the evidence of a title already complete, and to give notice of its existence for the safety of subsequent purchasers. This objection is without foundation.

The third and last special error assigned is, that the Court permitted a supposed copy of a patent, certified from the commissioners' office in *Kentucky*, to be read to the jury. We have already fully answered this objection. It appears from the bill of exceptions, which is made a part of the record in this case, that the Court instructed the jury that possession of the deed was constructive evidence of possession of the land, and sufficient to maintain the action until an adverse possession was proved; and that it was incumbent on the defendant to prove an adverse possession of 20 years in order to bar the action. These instructions were objected to by the defendant below, but the objection appears to have been abandoned, as no notice is taken of this point in the assignment of errors. In relation to this part of the case we would just observe, that by the deed *Shepherd* acquired a legal right of entry. Where there is a statute of limitation, as is the case in *England*, and in some of our sister states, an adverse possession of 20 years takes away the right of entry; and of course bars the action of ejectment. We have no operative statute, limiting the action of ejectment in this state: the right of entry is not taken away by an adverse possession of 20 years, or of any definite time (4). The instruction of the Court on this point, implies more in favour of the defendant below than he was entitled to.

From a view of the whole case we are of opinion, that no transcript of any act of assembly of *Virginia* was requisite to support the action; no exemplification of the patent was necessary; and any proof of the deed from the commissioners to *Shepherd* was altogether superfluous and useless. The deed, being more than 30 years old, required no proof. The patent having been acted upon, and deeds executed by the commissioners to claimants, from time to time, for upwards of 30 years; and these proceedings being public, notorious facts, making a part of the history of the country, afford ground for the strongest presumption that a patent, from the government to the commissioners, was executed according to the provisions of the act of 1783. But this fact does not rest on presumption: it is reduced to certainty by the act of 1796. The transcripts of the acts of assembly of *Virginia* which were offered in evidence on the trial, were sufficiently authenticated; but the act of 1796, which has an important bearing on this case, was not brought before the Court in that way. We consider this act as fully within the

knowledge of the Court, as those which were proved by exemplification. The reason why the printed statute book is excluded, and an exemplification of the act required as evidence of the law, in case of private acts and acts of foreign governments, is, that such statutes are not considered as being lodged in the minds of the people; they are not presumed to be known to the judges; and must therefore be proved by an exemplification of the act itself, attested and certified in a certain way. The reason does not apply in the present case. Judges are never presumed to be ignorant of the laws of their own country, from whatever source they may have originated. Here are certain statutes of a public nature, making a part of the law of the land, forming the basis of all the legal titles to real property in a very important section of the state; and these statutes publicly and uniformly acted upon and known to all the world for 36 years. Laws thus situated cannot be presumed to be unknown to the judges; they are presumed to be lodged in the minds of the people; and it is the duty of all Courts to notice them without any particular evidence (5).

Where evidence has been improperly admitted in the Court below, the usual practice is to reverse the judgment, and remand the cause for further proceedings. In this case the deposition of *Breckenridge* was improperly admitted; but we cannot hold ourselves justifiable in reversing the judgment, and subjecting the parties to the expense of another trial, on account of the improper admission of evidence which was wholly superfluous and useless; especially when the plaintiff is clearly entitled to recover on the merits, and must recover in another trial (6).

*Per Curiam.*—The judgment is affirmed, with costs.

*Caswell* and *Howk*, for the appellant.

*Nelson*, for the appellee.

(1) Where the seal of a state is affixed to an exemplification of an act of the legislature, the attestation of a public officer is not required. *The United States* v. *Johns*, 4 Dallas, 412. The seal itself is supposed to import absolute verity; and the annexation must, in the absence of all contrary evidence, always be presumed to be by a person having the custody thereof, and competent authority to do the act. *The United States* v. *Amedy*, 11 Wheat. 392, 407.

(2) The certificate of the presiding judge, under the act of congress of 1790, that the person whose name is signed to the attestation of the record is clerk of the Court, and that the signature is his own handwriting, is not sufficient: the attestation must be according to the form used in the state from which

the record comes; and the only evidence of its being in such form is the certificate of the presiding judge of the Court. *Craig* v. *Brown*, 1 Peters' C. R. 352. For the constitution of the *U. States*, and the acts of congress of 1790 and 1804 cited in the text, relative to the authentication of legislative acts, records of Courts, office-books, &c., of one state, necessary to their admission as evidence in another, vide Appendix.

For the decisions respecting the admissibility of copies of enrolled deeds as evidence, vide 1 Stark. Ev. Am. ed. 366—369, and notes. Since that publication, a case on this subject has occurred in the Supreme Court of the *United States*. A statute directed certain deeds to be recorded, but was silent as to copies being evidence; and a bargainee set up a deed of that kind against the attachment of a third person issued against the bargainor: the question was, whether a regularly certified copy of the deed was admissible evidence for the bargainee, without his showing that the original was not within his power? The Court held the copy to be inadmissible, on the ground that its admission would violate the great principle, that the best evidence the nature of the case admits of must be produced. *Brooks* v. *Marbury*, 11 Wheat. 78, 82.

(3) *Quære*, Whether, besides the ancient date of the instrument, some corroborating circumstance should not be proved; as, that possession of the land accompanied the deed, or that the writing was found in the proper custody. Vide 1 Stark. Ev. Am. ed. 343—345, and notes. The rule, that after a lapse of 30 years regular proof shall be unnecessary, is not confined to deeds or wills, but extends to letters and other written documents coming from the proper custody. The rule is founded on the antiquity of the instrument, and the great difficulty, nay, impossibility of proving the handwriting of the party after such a lapse of time. *Wynne* v. *Tyrwhitt*, 4 Barn. and Ald. 376.

(4) Vide *Doe d. Wood* v. *West*, ante, pp. 133, 136, note 2.

(5) For the statutes of *Virginia*, and a copy of the patent, referred to in the text, vide Appendix.

(6) If there be sufficient evidence to warrant a verdict, without the admission of a witness who has been improperly received, the Court, looking into the circumstances of such particular case, will not set aside the verdict. *Horford* v. *Wilson*, 1 Taunt. 12.—*Nathan* v. *Buckland*, 2 Moore, 153. So, when evidence has been improperly rejected at law upon an issue directed out of chancery, the Chancellor will not grant a new trial, if, upon the whole evidence, including that rejected, he is satisfied that justice has been done. *Hampson* v. *Hampson*, 3 Ves. & Bea. 41.—*Bootle* v. *Blundell*, 19 Ves. 503.—*Pemberton* v. *Pemberton*, 11 Ves. 52.—*The Warden, &c. of St. Paul's* v. *Morris*, 9 Ves. 169.—*Head* v. *Head*, 1 Turn. 142.—*Bullen* v. *Michell*, 2 Price, 492.—1 Hov. Sup. 36. Sed vide *Marquand* v. *Webb*, 16 Johns. R. 89; where it is held, that, if the Court below admit improper evidence, the Court of error must reverse; though there was other evidence given, fully sufficient to support the verdict.