By the Court, Nelson, Ch. J.
The charge of the circuit judge, as detailed in the bill of exceptions, is not very explicit, but we may fairly assume, I think, that the case was put to the jury on the question whether the conduct of the defendants, in regard to the manner of depositing the powder, was such as to render them guilty of a public nuisance; and if that point has been properly determined in favor of the plaintiff, then I apprehend his right to private damages must follow as a corollary. In this view, the question of negligence on the part of the defendants, except so far as it may be necessarily involved in the question of nuisance, has very little, if any thing, to do with the case. But, on the other hand, if the defendants’ conduct was not sufficient to render them chargeable with the offence mentioned, then the whole gist of the action lies in negligence, and the enquiry might arise whether this was so connected with the injury as to render the defendants liable. Perhaps evidence enough was given at the trial to have justified the judge in putting the case to the jury in either aspect; though the most satisfactory position for the plaintiff, I am inclined to think, and the one most difficult to be answered by the defendants, is the ground that the depositing and keeping of the powder in the exposed *295 situation described by the witnesses, amounted to a public nuisance, and that any individual sustaining a special injury from the act, was entitled to his private damages.
It was not doubted in “the case of The People v. Sands, (1 Johns. Rep. 78,) that the act of carelessly keeping fifty barrels of gunpowder in a housefin the village'ofi Brooklyn, was a nuisance at common law. The allegation iiythe«indictment there was, that the defendants kept the Barrels iit a certain house near the dwelling houses of divers good citiMns, and near a certain public street, without otherwise characterizing the manner of keeping the article; and, upon the principle that nothing will be intended or inferred to support an indictment, the court said, for aught they could see, the house might have been one built and secured for the very purpose of keeping powder in such a way as not to expose the neighborhood. Spencer, J. dissented, holding that enough appeared to make the question one for the jury to settle, who could enquire into the various circumstances of place, quantity, exposed situation of the neighborhood, dec. In a case before Lord Holt, (Anonymous, 12 Mod. 342,) the defendant was indicted and convicted for keeping several barrels of gunpowder in a house in Brent-ford Town, sometimes two days, and sometimes a week, till he could conveniently send them to London. And it was there resolved, “ that though gunpowder be a necessary thing, and for defence of the kingdom, yet if it be kept in such a place as it is dangerous to the inhabitants, or passengers, it will be a nuisance.” In Rex v. Taylor, (2 Strange, 1168,) the king’s bench granted an information against the defendant, for a nuisance, upon “ affidavits of his keeping great quantities of gunpowder,to the endangering of the church and houses where he lived,” or, as it should have been expressed, according to Bums, “ to the endangering of the lives of his majesty’s subjects.” (2 Burns' Just. 667, 8; 1 Russ. On Cr. 297, and note (o).)
I think the jury would have been well warranted in finding the defendants guilty of the offence, upon the facts disclosed in this case, as it cannot be doubted that the gunpowder was deposited in a building insufficiently secured and protected, and *296 altogether unfit for the safe keeping of so large a quantity of the article. The situation of the building in other respects^ moreover, was such as to render the gunpowder dangerous to the lives of the citizens; for an explosion, either by accident or design, at any period of time after the deposit, would in all human probability have proved destructive to more or less of the inhabitants residing in the neighborhood.
Assuming that the jury were justified in coming to this conclusion, the authorities are abundant to show that the defendants were answerable to the plaintiff for the personal injury occasioned by the explosion. The principle is stated by Abbott, Oh. J. in Duncan v. Thwaites, (3 Barn. & Cress. 556.) He there said, “ I take it to be a general rule, that a party who sustains a special and particular injury by an act which is unlawful on the ground of public injury, may maintain an action for his own special injury.” The following cases exemplify and apply the principle, viz: Rose v. Miles, (4 Maule & Selw. 101;) Henly v. The Mayor &c. of Lyme Regis, (5 Bing. 91; 3 Barn. & Adolph. 77, 1 Bing. N. C. 222, S. C. in error;) Pierce v. Dart, (7 Cowen, 609 ;) Lansing v. Smith, (8 id. 146 ; S. C. in error, 4 Wend. 25, per Walworth, chancellor;) Mills v. Hall, 9 Wend. 315.)(a)
But a new trial must he granted in this case for the error of the judge in admitting evidence of the wealth of one of the defendants. This was clearly inadmissible, and it is impossible to say what effect it may have had upon the verdict; nor is it “important to enquire, as this is a bill of exceptions.(b) The *297 plaintiff was entitled to the damages he had sustained, and nothing more, without regard to the ability or poverty of the defendants. The admission of the evidence implied at least that the jury might graduate their verdict in some measure by the means possessed by the defendants to satisfy it.
New trial granted.

а) See also The Mayor &c. of New-York v. Furze, (3 Hill, 612.)

б) Such is undoubtedly the true and only safe mode of dealing with questions of this kind, when arising upon bill of exceptions, or writ of error. The decision of the judge in admitting the evidence is made in the presence of the jury, who are thus virtually told that it ought to influence their deliberations, and the court can hardly be certain, in any case, that the jury differed from the judge, and entirely disregarded it. (See Osgood v. Manhattan Company, 3 Cowen, 612, 621; Marquand v. Webb, 16 Johns. Rep. 89 ; Anthoine v. Coit, 2 Hall's Rep. 40; Strang v. Whitehead, 12 Wend. 64; Penfield v, Carpender, 13 Johns. Rep. 350; *297 Irvine v. Cook, 15 id. 239 ; Haswell v. Bussing, 10 id. 128.) But in Crary v. Sprague, (12 Wend. 41,) it seems to have been laid down that a new trial will be refused, notwithstanding the admission of improper evidence, provided the verdict appear to be sustainable upon the other evidence, and be consistent with what is just between the parties. (See also Beebe v. Bull, id. 504; Henthorn v. Doe, 1 Blackf. Rep. 165, note (6).) This is clearly the rule where the question arises on a case presenting a full history of the trial, and where the motion is addressed to the sound discretion of the court; but as to a bill of exceptions, quere. (See Cameron v. Irwin, 5 Hill, 272 ; Soulden v. Van Rensselaer, 9 Wend. 296, 7; Jackson v. Roberts, 11 id. 430, and the cases there cited.)