## CRANDALL *v.* STERLING GOLD MINING CO.

JUDICIAL NOTICE — *laws of Kansas Territory.* If the laws of the late territory of Kansas, relating to the descent of real estate, were at any time in force in this territory, they are to be judicially noticed, and need not be proved at the trial.

KANSAS TERRITORY, *laws of, relating to descent of real estate.* In November, 1860, there were three statutes in Kansas relating to the descent of real estate. By the first, the widow had one-half the real estate of her deceased husband, the other half going to the children of the marriage and of the husband. By the second, she had one-half in value of the realty to be set apart to her under the direction of the court. By the third, she was endowed of the third part of all the lands whereof her husband was seized, of an estate of inheritance during coverture. She was required to elect between these acts within six months after the death of her husband.

ELECTION — *effect of widow's failure to make.* In ejectment by a widow claiming as heir to her deceased husband's estate, under the first of the acts

mentioned, it did not appear that she had declared her election to take under that statute within the time prescribed. *Held,* that she could not recover.

*Appeal from District Court, Gilpin County.*

Mr. E. T. WELLS, for appellant.

Messrs. JOHNSON & TELLER, for appellee.

HALLETT, C. J.   The plaintiff alleges that her husband, in his life-time, was seized of an interest in a claim on the Bobtail Lode, in Gilpin county, to one-half of which she became entitled upon his death, which occurred in the month of November, 1860.   She avers that, in November, 1860, the premises in controversy were within the limits of the late territory of Kansas, and that, by a law of that territory, upon the death of her husband she became entitled to the estate, which she now seeks to recover.   Upon the trial in the court below, no evidence was offered to show that Kansas territory included within its boundaries the district of country now known as the county of Gilpin, and probably the district court was required to take judicial notice of that fact, if it exists.   We shall not consider this interesting question, nor shall we consider another question of greater interest which relates to the force and effect of the laws of Kansas territory in a case of this kind.   We shall pass these and other questions presented in this record, and place our decision upon ground which is entirely satisfactory to us.

Assuming, *argumenti gratia,* that the district of country now known as the county of Gilpin was, at the death of plaintiff's husband in November, 1860, in the territory of Kansas, and that the law of descent of that territory is to be applied to this case, we propose to inquire whether, by that law, the plaintiff is invested with any estate in the premises in controversy.   Upon the trial in the court below, the plaintiff gave in evidence the law of Kansas territory, approved February 7, 1859, upon which she relies; another act, entitled "An act relating to dower," approved Feb-

ruary 27, 1860, affecting that upon which the plaintiff relies, was not given in evidence, and, therefore, we must first ascertain whether we can consider the act of 1860 in connection with the former law. Upon this point it is to be observed that these laws are not foreign to our territory in the sense in which the laws of one State or territory are said to be foreign to every other State and territory. We say that laws are foreign when they emanate from a jurisdiction territorially distinct and separate from our own. As to the premises in controversy, the jurisdiction of the territory of Kansas was coincident with our own, but precedent in the order of time. If the plaintiff had sought her remedy immediately after the alleged devolution of this estate, the forum in which she would have appeared and the law governing the case were provided by the territory of Kansas, and, in that event, no proof of the law would have been required. Since then the forum has been changed, but, upon the theory of the plaintiff, the law remains the same. We are told that the law of descent of Kansas territory is to be applied to all cases that arose within her boundaries while she held dominion. If so, it is to be as fully and as generally applied to such cases as is our own law to cases arising within our territory since the organization thereof, and the first is as much a part of our general law as the last. With respect to the point under consideration, we may say that these Kansas laws, if effectual as claimed by the plaintiff, stand upon the same footing as those acts of our own assembly, which have been repealed, if rights have accrued under them, whenever those rights are questioned, they are the subject of judicial cognizance in the same manner as if still in force. The case of *United States* v. *Turner et al.*, 11 How. 663, is instructive upon this point. In the district court of Louisiana a question arose concerning the validity of an instrument under the laws of Spain, in force in the province of Louisiana before the purchase, and counsel moved for an issue upon the points to be tried by a jury. This motion was denied, and the ruling was sanctioned by the supreme

court in language which, with a change of names, may be applied to the point we are considering.

"The Spanish laws which formerly prevailed in Louisiana, and upon which the titles of land in that State depend, must be judicially noticed and expounded by the court like the laws affecting titles to real property in any other State. They are questions of law and not questions of fact, and are always so regarded and treated in the courts of Louisiana."

The case of *Henthorn v. Doe*, 1 Blackf. 160, is equally to the point. There laws of Virginia, affecting title to real property in Indiana, were judicially recognized by the supreme court of the latter State in a decision which is very convincing upon this point. Upon reason and authority, therefore, we say, that if the law of descent of Kansas territory is to be applied to this case, it lies within the range of judicial information and need not be established by proof, and the act of 1860 is as fully known to us in a legal sense as that which was given in evidence upon the trial in the court below.

The second section of the act of 1860 mentions two acts which, together with the act of 1860, appear to have been in force at the time of the death of plaintiff's husband in November of that year. By the act under which plaintiff claims, which was the eldest of the three, a widow took one-half the real estate of her deceased husband, and the children of the marriage and of the husband took the remaining half. It seems that, under this act, partition of the property among the beneficiaries was not contemplated. Laws Kansas Ter. 1859, p. 565. By the second act the widow became the owner in fee of one-half in value of the realty, to be set apart to her under the direction of the court. Laws Kansas Ter. 1859, p. 381. By the third act, which we have referred to as the act of 1860, the widow was "endowed of the third part of all the lands whereof her husband or any other person to his use was seized of an estate of inheritance at any time during the marriage to which she shall not have relinquished her right of dower, in the man-

ner prescribed by law, to hold and enjoy during her natural life." Laws Kansas Ter. 1860, p. 110.

These several distinct and widely different estates were offered to widows by the laws of Kansas territory, but it was necessary that she should elect between them. If the statute was silent as to election there could be little doubt as to the intention of the law, for obviously the widow could not be allowed to hold under all these acts and thus absorb the estate, leaving nothing for the children. But the statute was not silent upon this point. In the second section of the act of 1860, it was enacted as follows :

"Every widow, within six months from the death of her husband, may, as she may prefer, use for her benefit either the provisions of this act or those of an act entitled, ' An act concerning descent and distributions." Approved February 8, 1859, or an act entitled, ' An act to protect the rights of married women, and in relation to the liabilities incident to the married contract relation.' Approved February 7, 1859."

We learn from this that the widow could have the benefit of but one of the acts, making provision for her out of the estate of her deceased husband, and that six months were allowed her to determine which of the several acts she would invoke. Under these statutes upon the death of a husband intestate nothing could be done toward vesting his estate in the heirs until the widow should choose between the several laws designed for her use. The widow had only an inchoate right prior to election, for until then the law, ignorant whether she would have a dower estate or an estate in fee, could not operate in her behalf. In justice to the children of the marriage and of the deceased husband the widow ought to have been and was required to make her election at an early day. Moved by such considerations doubtless the legislature of Kansas territory declared that the widow should elect between the several acts, securing to her an interest in her husband's estate within the six months succeeding his death, and this wise limitation is to

be enforced for the repose of estates and because it is the legislative will.

Under statutes and at the common law it has often been decided that a widow failing to elect between dower and a devise shall be held to have accepted the devise. *Pratt* v. *Felton*, 4 Cush. 175.

But this is upon the ground that a will is effectual unless expressly renounced. It needs no invocation to awaken its transmitting power, but bestows its gift unasked, unless the beneficiary expressly decline it. Not so however here, for the statute of 1860 requires that the widow shall be active in declaring her preference. If we say that in case of non-election she shall have an estate under one of the acts to which we have referred, how shall we choose between the several statutes? We are unable to do it. No one of these statutes could become efficient until its aid was invoked.

If the plaintiff here passively allowed the six months succeeding her husband's death to pass without manifesting by word or act her desire to hold under either one of these acts, she must suffer the loss resulting from her laches. We find no evidence in the record showing that the plaintiff, within the time prescribed by the act of 1860, elected to take the estate she now claims under the act of February 7, 1859. Perhaps the bringing of a suit would show an election, but if so, this suit was not brought until 1866, long after the law, weary of the plaintiff's delay, had turned to other representatives of her deceased husband.

In the absence of evidence upon this point, we think the judgment of the district court was correctly given for the defendant.

The judgment of the district court affirmed, with costs.

*Affirmed.*