RICH *vs.* RICH.

A defendant who pleads *liberum tenementum* to a declaration in trespass *quare clausum fregit*, setting out the close by abuttals, sustains his defence if he shows *title to that portion of the close* where the trespass is alleged by the plaintiff to have been committed.

*It seems* that neither the plaintiff when he new assigns, or the defendant when he pleads *liberum tenementum*, is bound to show title to the *whole close* described in the pleading; it is enough if title be shown to the *part* where the trespass was committed.

In trespass, where a defendant fails to support by proof a special plea in bar, a *trespass* or *cause of action* of the *general nature* set forth in the declaration is admitted; but the trespassers, precisely as laid in all their particulars and variety, are not admitted. The failure of the defendant to prove his plea, entitles the plaintiff to *nominal damages*, but nothing beyond, until he shows by proof a claim to greater damages.

Where a deed is ambiguous, as where it gives both *length of chain* and a *public highway* as the *termini* of a line, *parol evidence* of the *actual survey* and *location* of the highway is admissible, without producing the *record* of the laying out and survey.

When a party is bound to produce *record evidence* before introducing *parol proof* relative to the same subject matter, and he omits to do so, the error is cured if the opposite party subsequently, in the course of the trial, produce it himself.

To warrant an unqualified direction to the jury in favor of one party or the other, the evidence must either be *undisputed*, or the *preponderance so decided* that a verdict against it would be set aside and a new trial granted.

ERROR from the Oswego common pleas. The plaintiff sued the defendant in a justice's court in trespass *quare clausum fregit*, charging him with breaking and entering a certain close, situate in the town of *Albion*, " and abutted and bounded as follows, to wit : Beginning at the centre of the bridge over the Salmon river, near the mill lately owned by Moses Rich, deceased, and running from thence south 25 degrees, west 5 chains and sixty-three links along the centre of the highway, thence north 52 degrees, west 3 chains *along the centre of the cross highway*, thence north,'' &c., particularly describing the premises as contained in a deed by which the same was conveyed to the plaintiff; and also charging the defendant with trampling upon the grass and herbage there growing, and destroying 4 tons of hay—

and with breaking and entering a certain shop or building on the premises, tearing it down, and scattering and destroying 4 tons of hay which were in the building. The defendant pleaded *liberum tenementum,* upon which the plaintiff took issue, and the proceedings were then dismissed by the justice, and the suit proceeded in the common pleas upon the same pleadings. On the trial in that court, the *defendant* produced in evidence a deed of certain premises situate in the town of *Albion;* part of the description of which was, that the premises laid *south* of the centre of the *cross highway* mentioned in the plaintiff's declaration, and proved that the *cross highway* was *laid out* by commissioners in 1821, at the distance of not more than *four chains* from the *centre* of the bridge across the Salmon river, and that the *cross highway,* as *opened and travelled,* was in conformity to the survey as *actually made;* which facts were shown by *parol proof,* although the evidence was objected to by the plaintiff as inadmissible. The defendant also proved that he built a shop on the south side of the cross *highway,* about two rods south of the same, and that it was built upon the premises covered by his deed; of which shop the *plaintiff* obtained possession shortly before the commencement of this suit, and in it placed a quantity of hay. The defendant proved that at the time when the issue was joined before the justice, the plaintiff claimed that the shop erected by the defendant was built on his freehold; that he had put a ton or half a ton of hay into it, which had been thrown out by the defendant, for which cause and no other the suit was brought. This evidence was also objected to as inadmissible, and the objection was overruled by the court. The defendant rested. The plaintiff thereupon produced the town records of the establishment and survey of the *cross road,* and read in evidence a deed of the premises described in the declaration, bearing date in 1827, which is of a date anterior to the date of the deed produced by the defendant; both parties claiming under the same grantor. The *survey* described the road as commencing four chains *south of the bridge,* not *south of the centre of the bridge,* and it was proved that the distance

of the cross road from the *centre* of the bridge, was four chains; but that four chains from the *south end of the bridge* would extend *one chain and sixty-three links* beyond the cross road *as opened and travelled.* Before the cause was submitted to the jury, it was conceded by the defendant that if the plaintiff was entitled to call for the whole distance of 5 chains and 63 links, the *shop* in question was covered by the plaintiff's deed. The court charged the jury that the cross road *as opened and worked,* and not as *recorded,* was the boundary between the parties; and although a line 5 chains and 63 links in length from the centre of the bridge, would extend beyond the cross road as opened and travelled, the road as it existed at the date of the plaintiff's deed *controlled* the distance, and the plaintiff could not claim beyond it. They further instructed the jury that the plaintiff was not entitled to recover for the injury done in entering the shop and injuring the hay therein, because it was on the land of the defendant; and that all the other charges in the declaration were mere matters of form, for which the plaintiff was not entitled to recover. They also instructed the jury that under the pleadings in the case, it was not necessary for the plaintiff to prove title to *all* the premises described in the declaration; that it was enough for him to show title to that portion thereof, where it was alleged the trespass was committed. The plaintiff excepted to the charge. The jury found for the defendant. The plaintiff sued out a writ of error.

*J. W. Helme,* for the plaintiff in error.

*T. C. Chittenden,* for the defendant in error.

*By the Court,* COWEN, J. Several exceptions mentioned in the bill are not now insisted upon. That which respected the proof of the commissioners' survey by Gillespie was founded on the specific objection that such testimony was secondary in degree, and so not receivable till the town record should be produced, or its absence accounted for.

Admitting that the objection was well founded at the time, the plaintiff, from whom it came, afterwards produced that record himself, and thus took away the only ground on which the objection rested. *Jackson ex dem. Hills* v. *Tuttle*, 7 Cown, 364, is in point; and there are several cases showing that the effect of an exception may be neutralized in the course of the trial, even by the party against whom it is taken. *Murray* v. *Judah*, 9 Cowen, 484, 5, 490. *Norris* v. *Badger*, id. 449, 455. And see the cases cited in 7 Cowen, 365, note a; *Beebee* v. *Bull*, 12 Wendell, 504; *Pangburn* v. *Bull*, 1 id. 345; *Henthorn* v. *Doe, ex dem. Shepherd*, 1 Blackf. 157, 164; id. 165, note 6; *Liggett* v. *Bank of Pennsylvania*, 7 Serg. & Rawle, 218.

But I think the testimony was admissible. I do not understand that it was offered for the purpose of proving the *contents* of the town record. The defendant insisted that the *actual* cross road, not the *recorded* one, was intended by the plaintiff as the southern boundary of his deed; and every act which tended to fix and give notoriety to the road as a subsisting highway, was in that point of view admissible. The act of the surveyor or an admeasurement by any other person, prior to the date of the deed, would be material; but especially the *actual location* by the surveyor employed by the commissioners, followed as it was in truth by the subsequent public *user*. The survey of 1821 was the act of the commissioners, the public agents for laying out roads, and an ostensible location by them might and probably would fix the attention of a man taking his deed according to the road. The testimony both of the surveyor and commissioners went to show that the sources of correct information lay open to both grantor and grantee, which is always important in satisfying the inquiry whether the party intends to govern himself by a reputed boundary. *Crosby* v. *Parker*, 4 Mass. R. 110. Id. 113, per Parsons, C. J.

Several of the exceptions taken at the trial are founded on the peculiar *character of the pleadings in the action of trespass on lands*. The declaration was in nature of a novel assignment describing the close in which the trespass

was committed in the very words of the plaintiff's deed. The plea, instead of being not guilty as to all the close north of the road, and setting up title to the strip of 1 chain and 63 links lying south, at once claims a freehold in the whole of the plaintiff's lot. In other words, it is a formal plea of *liberum tenementum* to the whole close, on which the plaintiff took an issue equally broad. The general issue not being admissible in such a suit originating before a justice, at the time when this plea was interposed, and the defendant not having taken the precaution to limit his plea in terms, the plaintiff claimed at the trial, that the *implied admission* of the various acts of trespass set forth in declaring was co-extensive with the close. He insisted rigidly on the well settled theory, that what is not denied in a special plea stands conclusively admitted; and consequently the trespasses here stood admitted in all their particulars and variety; and also in respect to that part of the close which *clearly and indisputably belonged to the plaintiff.* The consequence claimed is, that there must have been a verdict in favor of the plaintiff for at least nominal damages. The defendant feeling himself embarrassed by the rule, sought to escape its effect by introducing evidence to show that, though the declaration was as usual vociferous in the kind, multitude and degree of trespasses, enough indeed to waste the whole close, yet, judging from what the plaintiff said, he intended only the removal of hay from the shop on the disputed premises. The testimony was certainly inadmissible, if taken as altering the legal construction of the pleadings; the declaration and plea must speak for themselves, and the secret or open intent of the party cannot change their legal effect. The evidence was, therefore, at most, admissible as limiting the application of the pleadings, provided that be admissible. The court so understood it; and the two concluding points in their charge are that the trespasses alleged but not proved, were mere matter of form, not the subject of recovery; and the defendant having shown title to the place where the trespass was in truth committed, though that was only part of the ground covered by the declaration and plea, he was entitled to a verdict

NEW-YORK,<br>May, 1837.<br><br>Rich<br>v.<br>Rich.

for the whole. This point is certainly attended with some difficulty ; but I think the court below were, in the correct sense of the cases, right. A special plea admits all which it does not deny, and in this case it admitted *a trespass* declared for; but not the trespasses precisely as laid, in kind, degree, extent, or value. The plea is, as I remarked, strictly formal. " That the said close, &c., now is, and at the said several times when, &c., was the close, soil and freehold of him, the said defendant; wherefore the said defendant, in his own right, at the said several times when, &c., committed the said supposed trespasses in the said declaration mentioned, in the said close *in which*, &c., so being the close, &c., of the said defendant, as he lawfully might." As to acts done, a special plea, if not supported, is much like a judgment by default. It admits a cause of action of the general nature set forth ; as an assumpsit, or a trespass ; but every thing else must be shown in proof, unless exact precision in the admitted allegation be material to the plaintiff. *Waggener* v. *Bells*, 4 Monroe, 7, 11, 12. *Haley* v. *Caller*, 1 Alab. R. 63. The defence set up by the special plea failing, and this not being accompanied by the general issue, the only consequence is, in general, that the plaintiff is entitled to nominal damages, until he shows by proof that more has been sustained. In trespass *quare clausum fregit*, this is especially so ; for the entry is the gravamen, according to the common sense of pleading, and all the residue is mere matter in aggravation. *Taylor* v. *Cole*, 1 H. Bl. 555.

Looking at the admission implied in a territorial point of view, I do not understand it ever to have been denied, that under this bar, the defendant must always have a verdict, provided he makes a title to the particular part of the close *where he trespassed.* Some little doubt of this right seems to have crept in, from what the court said of the analogous right on the side of the plaintiff in the case of *Hawke* v. *Bacon*, 2 Taunt. 156, 159. The plaintiff had new assigned, and the defendant rejoined title as to part of the close, leaving the trespasses unanswered as to other parts. The court said he should have taken issue as to the whole close, and

NEW-YORK,
May, 1837.

Rich
v.
Rich.

then, if the plaintiff failed as to any part, the verdict must be for the defendant. But, in the same case, they give a very comprehensive effect to this plea of *liberum tenementum.* Under that, they say, "If the defendant proves he has a single acre in the ville, the issue is with him, whatever quantity of land the plaintiff may have there; and if the plaintiff had meant to dispute the particular spot, he should have newly assigned." They mean this of a general declaration and general plea, of the plaintiff's close in such a ville or town, neither naming nor describing the close particularly, according to the remarks of Willes, C. J., in *Lambert* v. *Stroother*, Willes, 218, 223. *Hawke* v. *Bacon* is thus abstracted by the reporter: "Upon a plea of *liberum tenementum*, the defendant has a choice to what parcels he will apply his plea; and if the plaintiff insists on a trespass in other parcels, he must new assign." That is to say, if the plaintiff declare of his close generally in such a town, and the defendant says it is his freehold, on which the plaintiff takes issue, and the defendant shows a freehold in himself any where in the town, he succeeds, and the plaintiff shall not, in such case, recover on proof that the defendant had actually committed trespass any where else. The reason for this is very well assigned by Willes, Ch. J., in *Lambert* v. *Stroother*. "Formerly," says he, "when a plaintiff only declared generally, it was thought a great hardship on a defendant, to be obliged to answer such a general charge; for if the plaintiff had a large estate in the township, the defendant could not tell in which of the closes he would assign his trespass, and therefore they gave the defendant leave to plead the general issue, [common bar,] to oblige the plaintiff to make a new assignment, and ascertain the place in his replication. If he did not, and the defendant pleaded generally, as he might do, that the place in question was his freehold, the hardship would be turned on the plaintiff; for then, if the defendant could prove any one place in the township to be his freehold, the plaintiff would be gone, as is expressly held in the case of *Elwis* v. *Lombe*, 6 Mod. 117, 18, 19. And it is said in that case, and likewise in several other cases, that when the plaintiff is general in his declara-

tion, the defendant shall be allowed to be as general in his plea." And in *Goodright, ex dem. Balch* v. *Rich*, 7 T. R. 323, 331, Lawrence, J., puts it in this way: "According to the modern practice, if the defendant plead *liberum tenementum*, the plaintiff is driven to a new assignment, in which he must specify the close; otherwise, if the defendant prove his title to *any land falling within the general description mentioned in the declaration, it is sufficient.*" This rule runs down to the smaller parcel, and applies as well where the close is named or abutted as to a more indefinite case. In *Stevens* v. *Whistler*, 11 East, 51, the plaintiff declared for a trespass in his close called *Shepherd's lane.* The whole of this was a parish highway, and the plaintiff owned only one side of it, but proved a trespass on both sides and recovered generally. The court said the defendant by pleading freehold, might have driven the plaintiff to new assign of his side of the lane. In other words, under a plea of freehold to the whole, if the plaintiff had not new assigned, the defendant might at least have protected himself as to the side not belonging to the plaintiff, if he could not have defeated him altogether. It is evident that he might have defeated him entirely, had he applied his plea to the one-half of the lane, the title to which was out of the plaintiff, unless the latter could have answered by proving a trespass on his own side. Surely the statute, under which the plea in question was interposed before the justice, intended to be equally liberal. It expressly provides, that notwithstanding the plea of title, the defendant may, in the common pleas, prove that the plaintiff had not title to the premises when the trespass was committed. 1 R. L. of 1813, 390, § 7. He has not the advantage of a formal new assignment; he is stopped on his plea of title, and the hardship would be great which should refuse him the privilege of applying his plea to any part of the close, and putting the plaintiff at least to show a trespass on some spot where he appears to have title in the same boundaries. He takes a close as large as he pleases, the whole town, or 500 acres; and though the defendant should plead the general issue to a part, it is extremely difficult to say whether it would avail him. By the statute,

he was tied up to his title only, and on failing, was to pay double costs. *Strong* v. *Smith*, 2 Caines, 28. He may show title in a third person. Id. 29, 30. He may, says the court in *Douglass* v. *Valentine*, 7 Johns. 277, show three things, either of which will entitle him to a verdict, viz. title in himself, title in a third person, or possession out of the plaintiff. True, these cases hold that he admits the trespass. The single question is, to what extent? Not, wherever the plaintiff may choose to say it was committed. If we are to range the whole town, on a general declaration, where the defendant has title to one acre, he is to elect and say I trespassed there. If we range in a larger close, which the plaintiff has set out, the defendant may, by a parity of reasoning, show a title to part; and at least, then, throw the *onus* on the plaintiff of making out a trespass in another part, where he has title. If the plaintiff would avoid having the *onus* thrown upon him, he should be careful in his declaration or novel assignment, not to claim more land than he owns, and put the defendant to divide the close in his plea.

The simple proposition comes to this : that where issue is joined upon the title to a single close, neither party is bound to show a title to the whole. It is divisible. The plea admits a trespass somewhere in the close, but not in all and every part of it. No such thing is alleged in the declaration ; no such thing is implied by law ; and the law goes on shifting the *onus probandi*, and allowing the parties to apply their evidence according to the justice and equity of the case. The substance of the issue is to be proved. That substance is, whether the spot where the act was done belongs to one party or the other.

Suppose the plaintiff puts in a replication, alleging title in himself to a certain close wherein the trespass was committed, on which the defendant takes issue, the plaintiff is not bound to show title to the whole, but only that part where the trespass was committed. I know the contrary was held in *Hawke* v. *Bacon*, in analogy, as was said, to the proof under the plea of *liberum tenementum*; but that

decision and the analogy on which it proceeded, has been overruled by at least three several cases.

The narrow view taken of the plaintiff's rights in *Hawke* v. *Bacon*, tended, it is true, in some degree, to shake those of the defendant, which appear so plainly to stand upon the same reason. In *Richards* v. *Peake*, 2 Barn. & Cress. 918, the plaintiff new assigned a trespass in a close called *Burgey Cleave Garden*, making title to the whole. The defendant took issue on the title to the whole, as he had been directed to do in *Hawke* v. *Bacon*. On the trial, it appeared that the part of the close where the trespass was in fact committed, belonged to him; but a considerable residue belonged to the plaintiff. The verdict being, as the judge at nisi prius directed, for the defendant generally, on a motion for a new trial, Abbott, C. J. said the words in the replication, "The close in which, &c., in the declaration mentioned," confined that allegation to the spot where the trespass was committed; and Holroyd, J. said the allegation was divisible, and raised a question of title as to the particular part of the close where the trespass was committed. *Tapley* v. *Wainright*, 5 Barn. & Adolph. 395, presented a similar issue; and it was held that the inquiry at the trial ran through the whole close and all its parts; that it was divisible, and the plaintiff should recover for a trespass in a part of the close where he had title, though the defendant owned other parts. Denman, C. J. said, "Our decision is at variance with the dictum in the court of common pleas, in *Hawke* v. *Bacon*, which, after much consideration, we think is not founded on sufficient reason; and not supported by the analogy to the plea of *liberum tenementum*, on which it appears to have been founded." These two last cases show the proper construction on the replication by which the new assignment is made, both in respect to the plaintiff's and the defendant's right to limit the operation of the pleadings to the territorial evidence. The principle plainly comprehends this case; but *Bassett* v. *Mitchell*, 2 Barn. & Adolph. 99, is still more closely analogous. The declaration in *trespass quare*, &c., set out the abuttals. The plea was, that the said close in which, &c., was part of an allotment

of six acres, wherein the defendants had authority by law to get materials for repairing the highway; and they justified the trespass under such authority. The plaintiff replied, that the close in which, &c., was not parcel of the six acres. Only a part of the close was, in truth, parcel of six acres, and in that part alone the trespass was committed, as the jury found; and Littledale, J. held and so directed at the circuit, that this was finding the whole issue for the defendants. A verdict being entered accordingly, on a motion to change and enter it in favor of the plaintiff, Lord Tenterden, C. J. said, " The opinions of the court in *Richards* v. *Peake,* go the whole length of this case; and if, as has been urged, we are to look to convenience, I think that is on the side of the defendant. The declaration charges the commission of trespasses by digging the soil and otherwise, in a close of the plaintiff, which it describes. The plaintiff was not obliged, in support of this declaration, to prove trespasses committed in every part of the close. The defendant was not bound to support his justification as to all parts. It is said that the record, under these circumstances, will not be decisive evidence in a future action; nor will it as to the whole land in question; but either party may show by evidence what part it was that was affected by the result of this cause. If the objection which has been taken for the plaintiff were to prevail, it would lead to great inconvenience on the trial, where pleas of this nature have been pleaded, and such causes would often be decided on points of form, and not on those really in question." Littledale, J. said, " The record would be evidence of a former decision as to part of the place in dispute; and it must be shown by proof which part that was. If this imposes any hardship on the plaintiff, it may as well be said on the other hand, that a defendant is subjected to hardship, because a plaintiff may recover by proving a trespass committed in any part of the close mentioned in his declaration; since that declaration, unexplained by evidence, would be conclusive against the defendant afterwards, as to the whole close. I think the allegation here, ' that the close in which, &c.,' was part of the allotment was strictly proved;

for the close in which, &c., was applicable to any part of the land within the bounds stated in the declaration, in which the plaintiff might show a trespass actually committed." Taunton, J. said, " It is clearly held in *Richards* v. *Peake*, that ' the close in which, &c.,' does not mean the whole close referred to in the declaration ; but the place in which the trespass is proved to have happened, and the defendant may so apply it. Here trespasses were proved in one part of the close only, and the defendant established his right in that part." Patterson, J. said, " The description given in the declaration, is merely for the purpose of identifying the close which is the subject of the action. When the trespasses are stated, the words ' in the said close,' do not mean every part of the close ; and the plea must be understood in an equally confined sense."

I do not deny, that on a naked plea of *liberum tenementum, prima facie* the plaintiff may be entitled to recover. *Prima facie*, his possession is admitted, the trespass is admitted, and he may take his verdict of six cents, if the defendant show no right in the close described. But if the latter prove title to a part, he may say, " here the trespass was committed." In other words, he may apply his proof to that part. The *onus* then changes. The plaintiff must show a trespass within the bounds of his own title. The defendant cannot prove the negative. He cannot locate the trespass. That is properly the plaintiff's business. The great question in the cases has been, whether he had even that right left. And this is all very reasonable. The plaintiff takes what extent of close he pleases. Suppose the defendant shows title to the whole except a few feet ; it cannot be right to demand of him that he should take the plaintiff's case into his own hands, and show that he never passed the boundary of his title. All the rule requires is, that the plaintiff should do that.

It is supposed that a distinction may be taken between this case and those cited, from the fact that the general issue was there pleaded ; whereas here is only a naked justification. But in *Tapley* v. *Wainwright*, there was no general issue. The plea was simply of title under a right

of common, which the replication sought to avoid by aver-
ring that the common had been enclosed for more than twen-
ty years. The trespasses alleged by the plaintiff stood com-
pletely admitted to the same extent as here. Yet the plead-
ings were held divisible as to territory, and the plaintiff was
put to the proof. The great question there was, whether on
such an issue, the plaintiff was not bound to show title to
the whole. He proved, in fact, a variety of trespasses ex-
tending throughout the territory covered by the pleadings,
as well that which belonged to him as to the defendant, and
the recovery was divided and adjusted accordingly. In none
of the cases does the reasoning of the court turn at all on the
interposition of the general issue. In whatever form the
question of title may be introduced, I understand the cases
fully to establish that it is absolutely and unqualifiedly divisi-
ble. Equity can easily be attained by a proper change of
the *onus*. These authorities place the pleadings in trespass
upon a practicable footing ; and they are conformable to the
general rule, that quantities and measures are immaterial.

What passed before the justice while this cause was there,
so far as it went to limit the trespass to the south side of
the cross road, if it were admissible within the cases from
which I have read, was at most immaterial ; for the law im-
plied what it tended to prove. It could do no injury, in any
possible view. This disposes of the exception to that evi-
dence ; and upon the supposition that the court were correct
in their charge to the jury on the main point, then that part
of the charge which in effect directed that the trespasses sup-
posed to have been admitted by the form of pleading, were
out of the case, and that the issue, in that respect, was con-
fined to the disputed strip of land, was also right.

I have before taken notice of about all the material evi-
dence on the question of title. That lay between the cross
road *as recorded* and the cross road *as travelled*. And the
question now is, whether in the eye of the law, for it was
decided as a question of law in the court below, the road
*de jure* or the road *de facto* should constitute the southern

boundary. The deed, as we have seen, bounded itself on the cross road, the grantor then owning enough land to satisfy it taken either way. Admitting the road to have been duly recorded, we then have two different abuttals, either of which will answer to the southern line of the conveyance; and, on the first blush, I confess it struck me as a case proper to be left to the jury, upon the circumstances. The theoretical road would give the length of chain. True, authorities are cited for the well settled rule that a known monument shall control distance; but that begs the question. Which is the known monument that is to exercise this control—the recorded line or that marked on the ground? On this question of intent, the court below felt themselves authorized to direct a verdict in favor of the line as it had been surveyed, laid out and worked. To warrant an unqualified direction at the trial in favor of one or the other party, the evidence must either be undisputed, or there must be such a strong preponderance that should the jury find against it, a new trial would be granted for that reason. Per Gaselee, J. in *Davis* v. *Russell*, 5 'Bing. 354. Per Marcy, J., in *Demyer* v. *Souzer*, 6 Wendell, 436, 438. And see *Ward* v. *Van Duzer*, 2 Hall's R. N. Y. S. C. 162. Nor is it always enough that the evidence be undisputed, if it be of a circumstantial character: for then there is often a conclusion to be drawn by the jury; and to warrant the direction of the judge, the conclusion should be so plain that a verdict against it would be set aside. But where there is a conclusion of law arising on plain facts, the judge may, and it is indeed his duty to direct a verdict according to such conclusion. Thus in a conveyance, a line of a given length between two well ascertained *termini*, leaves no room for the jury to pass beyond them upon the intent, though the line exceed the intermediate distance. And in one case, where the place of beginning was at the land of A. at a stake and stones there; and there were two such monuments near each other, one on land holden by deed to A. in fee, and the other holden by him upon contract, the court felt itself authorized to prefer the former as matter of law, though there were some words in the conveyance

which seemed to indicate the latter as the point intended. Crosby v. Parker, 4 Mass. R. 110, before Parsons, C. J., who tried the cause and afterwards joined in passing on the point at bar. A similar direction was given in Jackson, ex dem. Livingston v. Freer, and sanctioned by this court, 17 Johns. R. 29, upon facts much more strongly resembling those proved here. A map had been made, under the direction of the commissioners of the land office, and filed in the secretary's office, representing allotments numbered, with their courses and distances according to which patents had issued ; but the map had been made on actual survey, which was accompanied with marked ground lines. From these the map differed ; and when patents came to be issued for the lots as represented on the map, it was discovered that pursuing the latter would derange the marked ground lines, which were also described in the field book. In ejectment, wherein the map was set up against the practical location. Mr. Justice Yates directed a verdict in favor of the latter. Spencer, C. J., delivered the opinion of the court, on the motion for a new trial. He said, " the real question is, which shall prevail, the actual location of the lots on the ground, by marking and numbering trees at the corners, and by marking the lines of the lots, or the corners and distances which the map represents the lots as entitled to ? The survey of the lots and the actual location of them was the joint act of all the parties interested, and must control." He held the actual survey to be the practical location, and said that the patents, by referring to the map, virtually referred to the field book and survey also. I understand the principle of this decision to be, that where ground lines are established by competent authority on actual survey, and marked, they shall prevail over similar lines marked or described on paper, and filed in a public office : and when they are afterwards spoken of as lots or roads, no matter which, the practical lot or the practical road is to be intended. Such, we know, is universally the case in common parlance. It was said in Jackson, ex dem. Livingston. v. Freer, that the map was of use for representing the relative position of the lots. In the case before the court, it is difficult to conceive

NEW-YORK, May, 1837.

Rich v. Rich.

of any use that the recorded survey could be put to in the book of roads. In truth, no such survey had ever been made, and the distance was probably a mere slip of the pen. The surveyor and two of the commissioners, the only two whose names appear on the record, testified that the road, as laid out, was according to the actual original survey. It was immediately opened and worked, and used by the public up to the time of the trial; at the time of the conveyance to the plaintiff, more than six years had elapsed from the date of the survey, and nearly that time from the recording of the mistaken road. Admitting the record to have ever been valid, it was nearly gone by the statute limitation of six years, when the plaintiff took his deed. 2 R. L. of 1813, 277, § 23. The record had lain as waste paper, and the road, as described, never opened nor worked, nor thought of, from the 14th of June, 1821, the time of the survey, and from the 10th of September of that year, when it was filed. The commissioners might doubtless, at any time, have relaid the road, discontinued the old description, and filed a corrected record. But it is moreover quite doubtful whether the record ever had any validity. It was not founded on a survey, which was required by the statute, 2 R. L. of 1813, 270, § 1. It was never assented to by the commissioners; and it is quite evident that they never intended to sign or deliver such a paper as the surveyor made to represent the road. There appears to have been no cognizance, no act of jurisdiction by the competent authority. The words four chains *south of the bridge* seem to have been written by mistake, instead of four chains south of *the centre of the bridge*. The surveyor, the axe-man and the two commissioners all concur in the actual location at the four rods from the centre; and they were uncontradicted at the trial. This naked description, so palpably contradicted by acts open and notorious, by all appearances, and so easily refuted by numerous sources of information; a description too of doubtful authority in its origin, and, if ever valid, nearly overcome by the statute of limitation, certainly dwindles into comparative insignificance, by the side of the numerous and imposing circumstances which bespoke the real road;

and comparing this with the cases in which courts have directed verdicts on questions of boundary, I feel, on the whole, satisfied that the court below has not gone beyond them. Indeed, I think the balance of evidence quite strong, if not conclusive, that the plaintiff, when he took his deed, must have done so in reference to the ostensible road as his real boundary.

The result is, that the judgment below must be affirmed.