Dunckle *v.* Wiles.

———•◦•———

CLINTON GENERAL TERM, July, 1849.    *Paige, Willard, and Hand,* Justices.

## DUNCKLE *vs.* WILES.

A judgment for the plaintiff in an action of trespass *quare clausum fregit,* in which the defendant pleaded *liberum tenementum,* is a bar to an ejectment for the same premises, or a portion thereof, subsequently brought by the defendant in the former suit against a person deriving his title to the land through the plaintiff in that suit.

And if the defendant in the second suit proves that the conveyances under which he claims include the land described in the declaration in the first suit, or purport to convey all the right which the plaintiff in the former suit had, at the time of commencing that suit; and that the land for which the ejectment suit was brought is a portion of that described in such declaration, the record of the judgment in the former suit is *prima facie* evidence that the title to the land for which the ejectment suit was brought was in controversy in the former suit, and was found not to be in the plaintiff in the ejectment suit.

If it be proved that the land in controversy in the ejectment suit is the same land for trespasses upon which the former suit was brought, and recovery had, such record will be conclusive.

In in action of trespass *quare clausum fregit,* where the defendant pleads *liberum tenementum,* the plaintiff will recover if he shows a trespass committed on any part of the close described in the declaration, to which the defendant does not show title. And the defendant, although he has pleaded title to the whole,

Dunckle *v.* Wiles.

will succeed if he shows title to that part upon which he has trespassed; not-withstanding he has no title to the remainder of the close. *Per* HAND, J.

And if the plaintiff shows trespasses on different parts, and the defendant proves title to some of them, the defendant will have judgment as to those parts to which he has title, and the plaintiff as to the others. *Per* HAND, J.

The plaintiff is not bound to show a trespass upon the whole premises, nor the defendant that he has title to the whole, in order to succeed; but each may succeed *pro tanto*, according to the proof. *Per* HAND, J.

If but one close is set out and described in the declaration, and judgment passes against the defendant upon the single plea of *liberum tenementum*, the record is *prima facie* evidence of title in the plaintiff.

The verdict of a jury upon title, in trespass, not only operates as a bar to the fu-ture recovery of damages for a trespass, founded upon the same injury, but ope-rates also as an estoppel to any action for an injury to the same supposed right of possession. *Per* WILLARD, J.

As the former judgment can not be pleaded by way of estoppel, in an ejectment suit, the defendant is entitled to avail himself of it as evidence under the general issue. And when evidence of a former recovery is thus introduced, it is as con-clusive as though the matter had been specially pleaded by way of estoppel. *Per* WILLARD, J.

The record must show that the same matter might have come in question on the former trial, and then the fact that it did come in question, may be shown by proof *aliunde*.

THIS was a motion, by the defendant, for a new trial, on a bill of exceptions. The action was ejectment, and was tried before the Hon. Ira Harris, justice, at the Montgomery circuit. The cause had been once tried previously, and a new trial granted. The plaintiff sought to recover seven acres of land described as the northeast corner of lot No. 10 in a patent of land granted to Brodt and Livingston. The plaintiff gave in evidence letters patent to Brodt and Livingston, granted in 1738, for premises described in the bill of exceptions as follows: "Situ-ate in the town of Canajoharie and begins at the south branch of the Mohawk river at the most southerly corner of a tract of land formerly granted to James Alexander, Lewis Morris and Cadwallader Colden and others, and runs along the line of the said land south 30 deg. west 244 chains to two lime trees grow-ing from one root, of which one is marked V. S. on the south side thereof, and with three notches on the other three sides, being marked for the westernmost corner of the land granted to James Alexander and others; then along the lines of the land

granted to Elizabeth Colden, N. 32 deg. 30 min. W. 58 ch. to a large maple tree marked with three notches on three sides, and a smaller one growing out of the same root with three notches on one side, there being an iron-wood tree and a spruce tree near the same place each marked with three notches on four sides—and S. 59 deg. W. 126 ch. and N. 72 deg. W. 45 chains and 2 rods to the land formerly granted to Alex'r Colden, then along his lines N. 40 deg. east 162 ch. to a large beech tree and a smaller and a maple sapling, all marked with 3 notches on 4 sides, and N. 32 deg. 30 min. W. 56 ch. then N. 75 deg. 30 min. E. 7 ch. to a large black oak tree, an iron-wood sapling and a maple sapling, each marked with notches on four sides for the S. W. corner of the land formerly granted to Belger Bleeker and others; then continuing the same course along the line N. 75 deg. 30 min. E. 220 ch. to the Mohawk river; and then down the stream of the said river to the place where the tract begun, containing 3200 acres of land." The plaintiff then gave in evidence a deed from Brodt and Livingston to H. Freye of their patent, dated April 5, 1760, the description of the land being the same as in the original patent. Also a warranty deed of lot No. 10 of the patent, from Freye to A. Medler, describing said lot as follows : "All that certain lot or parcel of land situate, lying and being in the county of Montgomery, on the south side of the Mohawk river, in a patent granted to Philip Livingston and others, and is known by the name of lot No. 10, begins at the S. E. corner of lot No. 9, being a hemlock stake standing south 17 degrees W. 17 links from a rock maple tree cornered and marked No. 10 A. M. on the E. side and 9 on the W. side thereof, and runs thence as the needle now points N. 37 deg. and 30 min. E. 57 chains to a hemlock stake; thence 32 deg. 30 min. E. to the line of a patent granted to James Alexander; thence along the said line S. 30 deg. W. to two lime trees growing from one root; thence N. 32 deg. 30 min. W. to the place of beginning, estimated to contain 100 acres, be the same more or less." Also another warranty deed from Medler to Peter Dunkle, jun. dated June 5, 1797, of lot in Livingston and others' patent, described as follows : " known by lot No. 10, begins at

the S. E. corner of No. 9, being a hemlock stake standing S. 17 deg. W. 17 links from a rock maple cornered and marked No. 10 A. M. on the east side and 9 on the W. side thereof, and runs from thence as the needle pointed in 1793, N. 57 deg. 30 min. E. 57 chains to hemlock tree, thence S. 32 deg. 30 min. E. to the line of a patent granted to James Alexander, thence along the said line S. 30 deg. W. to two lime trees growing from one root; thence N. 32 deg. 30 min. W. to the place of beginning, estimated at 100 acres, be the same more or less.". The plaintiff also proved the will of P. Dunkle, jr. devising to the plaintiff that portion of this 100 acres which would cover the land in question, if within Brodt and Livingston's patent. He also introduced several witnesses for the purpose of showing that the true east line of Brodt and Livingston's patent would include this land. After a motion for a nonsuit had been denied, the defendant introduced in evidence a record of judgment in favor of Samuel Jackson against Adam Dunckle in an action of trespass. The memorandum was of July term, 1833, and judgment was signed January 24, 1834. All farther in relation to that suit necessary in this case will be found in the opinion of the court. The defendant also gave in evidence a deed from Samuel Jackson to P. Roof, dated July 30, 1835, and from P. Roof to himself, dated November 1, 1843, and called witnesses for the purpose of showing that the land described in the declaration in said record between Jackson and Dunckle, and also described in those two deeds, included the seven acres for which this action was brought. By the exemplification of the grants it appeared that two patents had issued to Alexander, Morris and others. The lands granted were contiguous to each other, and the one next to Brodt and Livingston's patent was granted in 1723, and was bounded on and recited the former one to the same parties, and made up a deficiency therein. The boundaries were described by courses and distances, and no monuments given, except that the Mohawk river was the northern boundary, and the west line running to the river came out at " Indian hill," which was described as the northwest corner of the patent. Evidence was given for the purpose of showing what and where

this hill was.    The testimony in the case was very voluminous, but this statement is sufficient for an understanding of the opinion of the court.    The plaintiff claimed that the true location of the east line of Brodt and Livingston's patent would include the land described in his declaration, and the defendant contended that it was east of, and within the west line of, the Morris or Alexander patent, and was also included in the lands described in the declaration in the record of Jackson v. Dunckle.

The court charged the jury that the deeds from Freye to Medler, and from Medler to Dunckle, vested the title to lot No. 19 in Brodt and Livingston's patent in the elder Dunckle, the ancestor and devisor of the plaintiff; that the question for them to determine from the evidence was, which of the two lines was the true eastern boundary line of that lot, and this would depend upon the question whether the east or the west line which had been spoken of by the witnesses was the original line between the Morris patent and the Brodt and Livingston patent; that it was pretty evident from the descriptions that both were granted before any survey had been made.    It also appeared that if the west division line should be adopted, one course in the Medler deed would be lost, and the lot, instead of containing 100 acres as stated in the deed, would only contain about 60 acres.    That in their deliberations it would be important for them, if they could, to satisfy themselves where the two basswood trees stood, as they were referred to in the Brodt and Livingston patent as the point where the east boundary line of Brodt and Livingston's patent terminated and the southwest corner of the Morris patent. After further commenting upon and reviewing the evidence, the court left it to the jury to determine from all the evidence in the case which was the true boundary line between the patents, and instructed them that the plaintiff or defendant would be entitled to their verdict as they should determine that question.    To this charge, and every part thereof, the counsel for the defendant excepted.    The defendant's counsel requested the judge to charge the jury, that if they believed from the testimony the trespasses for which Jackson prosecuted Adam Dunckle were upon the seven acres in dispute in this suit, then that action

was a bar to this action. This request the court refused, and the defendant by his counsel excepted. The defendant's counsel also requested the court to charge the jury, that neither the description given in Brodt and Livingston's patent, nor the deed from Henry Freye to Medler, nor the deed from Medler to Peter Dunckle, were evidence of the boundaries of Morris and Alexander and others' patent. The judge stated to the jury that nothing in these instruments would be conclusive upon the question as to the boundary of the Morris patent, but that the circumstances to which he had referred in his charge, in respect to these instruments, might properly be taken into consideration by them in their inquiries after the true boundary between the two patents, and he refused to charge otherwise in this respect. To which refusal and charge the counsel for the defendant excepted. The defendant's counsel requested the court to charge the jury that the Indian hill at the river was a monument mentioned in Morris' patent, and must control in adopting the courses given in the letters patent, and that the existence of old fences upon this line, for two miles, was strong and should be controlling evidence in favor of the west line. The judge refused to comply with this request, but stated to the jury that if they could satisfy themselves, from the evidence, as to the location of the Indian hill, it would be an important circumstance to assist them in finding the boundary line in question; that the existence of old fences along some portion of the westerly line was a circumstance in favor of adopting that as the true line. That they had a right to take this into consideration also, and to give it such weight as they should think it deserved, in determining the question submitted to them. To which refusal and charge of the court, and every part thereof, the counsel for the defendant excepted. The jury found a verdict for the plaintiff.

*T. B. Mitchell & J. A. Spencer*, for the defendant.

*H. Adams*, for the plaintiff.

HAND, J. One question in this case is, whether the record of recovery in *Jackson* v. *Dunckle* is an estoppel, so as to bar the plaintiff of the right to set up title to the premises in question? The bill of exceptions upon which a new trial was granted in this cause upon that point, is not before us. The particular state of the cause, as it stood upon that hearing, can only be gathered from the opinion given upon granting a new trial. From that, I presume there was no such request to charge, as appears here. Jackson, the plaintiff in the former suit, is the grantor of the defendant's grantor. Consequently, if those deeds, in terms, cover the premises in question, or profess to convey all the rights of Jackson thereto, there is such privity of estate, that if Dunckle would be estopped were Jackson the plaintiff, he is so now.

On the last trial of this cause, the defendant requested the justice holding the circuit, to charge the jury, that if they believed, from the testimony in this cause, that the trespasses for which Jackson prosecuted Dunckle were upon the seven acres in dispute in this suit, then, that recovery was a bar to this action. This request was denied; and if the defendant's position was correct, a new trial must be granted.

Jackson sued Dunckle for trespass upon part of lots 4 and 5 of the 3d tier in the division of large lot No. 6 of Morris and others' patent, and his declaration particularly described the parcel by metes and bounds, and stated that it contained over 100 acres. The 2d count was for trespass, without particularly describing the lands; and the 3d for cutting and carrying away the trees, &c. on the land of the plaintiff. The defendant in that suit pleaded that the land mentioned in the three counts were one and the same close, and that the part of it upon which the supposed trespasses were committed, was the close, soil, and freehold of the defendant (Dunckle) in that suit. Issue was taken upon this plea, the replication denying that the close, or any part of it, belonged to Dunckle; and a verdict was rendered therein that the close in the said declaration mentioned was not, nor was any part thereof, the close, soil, or freehold of Dunckle, and the jury assessed the damages at six cents. On

the trial of this cause, there was proof tending to show that the land for which this suit was brought was comprehended within the parcel described in the declaration in *Jackson* v. *Dunckle.* The verdict, it will be observed, stated that no part of the close described in that declaration was the close, soil and freehold of Dunckle ; and if the seven acres now in controversy were included within the description in that declaration, of course it was covered by the verdict in that suit.   On the other hand, as Dunckle pleaded that *that part* of the land upon which the *trespasses were committed* was his close, soil and freehold, and said nothing about the remainder, although the replication denied title to, any part, the title to that part he had not trespassed upon was not strictly, or in terms, put in issue by the plea ; and as that record does not state upon which part the trespass was committed, the verdict, it would seem, as to all not trespassed upon, is apparently, so far beyond the issue.   The plea did not point out the particular portion trespassed upon, and deny trespassing upon the remainder ; and in this respect, it seems, was quite unusual, and perhaps demurrable for uncertainty ; as it would be difficult for the plaintiff to new assign so as to cover scattered parcels of the same close.   But I think that point does not arise here.   I understand the rule in relation to the plea of *liberum tenementum* to be, that it gives implied color to the plaintiff by admitting such possession in him as would suffice to maintain trespass against a wrongdoer, but to assert a freehold in the defendant, with a right to immediate possession.   The plea is not supported by evidence of mere acts of ownership for less than 20 years, for by it the defendant admits that the plaintiff is in possession, and that the defendant is *prima facie* a wrongdoer ; and he undertakes to show a title in himself that shall do away with the presumption arising from the plaintiff's possession, by showing title by deed in the usual way, or possession for 20 years.   (*Rich* v. *Rich,* 16 *Wend.* 663.   *Lempriere* v. *Humphrey,* 3 *Adol. & El.* 181.   *Brest* v. *Lever,* 7 *M. & W.* 595.   *Doe* v. *Wright,* 10 *Adol. & E.* 781.)

It was formerly supposed that if the plaintiff failed as to any part, the verdict must be for the defendant.   (*Hanks* v. *Bacon,*

2 *Taunt.* 159.) But now the contrary seems clearly settled; while on the other hand, the defendant will have a verdict if he proves title to the part trespassed upon; and is not bound in such cases to prove title to the whole close. (*Rich* v. *Rich*, 16 *Wend.* 663. *Tapley* v. *Wainwright*, 5 *B. & Ad.* 395. *Richards* v. *Peake*, 2 *B. & C.* 918. *Basset* v. *Mitchell*, 2 *B. & Ad.* 99. *Smith* v. *Royston*, 8 *M. & W.* 381.) In *Tapley* v. *Wainwright* it was held that the term " close" in the words of the issue, " the said close which," &c. was a divisible allegation. Ld. Denman, C. J. likened it to assumpsit for goods, with a plea of infancy, and replication that they were necessaries; in which case the verdict would be for the amount shown to be necessaries. In that case the verdict was allowed to be entered for the plaintiff for part, and for the defendant for the residue. And to the same point is *Richards* v. *Peake, supra.*

It is clear, then, that on the trial the plaintiff will recover if he show a trespass committed on any part of the close described in the declaration to which the defendant does not show title; and the defendant, although he has pleaded title to the whole, will succeed if he show title to that part upon which he has trespassed, notwithstanding he has no title to the remainder of the close. And if the plaintiff shows trespasses on different parts, and the defendant title to some of them, the defendant will have judgment as to those parts to which he has title, and the plaintiff as to the others. And with this agree the cases of *Rich* v. *Rich*, (16 *Wend.* 663,) and *King* v. *Dunn*, (21 *Id.* 253.) The plaintiff is not bound to show a trespass upon the whole premises, nor the defendant that he has title to the whole, in order to succeed; but each may succeed *pro tanto*, according to the proof. But there is another question : in case of a general verdict for either, what is the presumption ? Judge Cowen said, in *Rich* v. *Rich*, that the plaintiff was entitled to nominal damages without proof. (16 *Wend.* 674.) This is upon the principle of implied admissions in a special plea, which confesses and avoids. We have seen that this plea admits possession in the plaintiff, which is *prima facie* evidence of title. Upon principle and analogy, then, it seems to me, that if but one close is

set out and described, and judgment passes against the defendant upon the sole plea of *liberum tenementum,* the record is *prima facie* evidence of title in the plaintiff.  That it may be fairly presumed, in that case, that there is unity of title to the whole close, and consequently, a presumption against the defendant having title to any part of it.  And on the other hand, if a general verdict be in favor of the defendant, that the same presumption arises in his favor.  In both cases, however, the presumption may be rebutted by showing what was actually in controversy on the trial upon this plea.  And I understand the language used by Ld. Tenterden, C. J., and Littledale, J., in *Bassett* v. *Mitchell,* (*supra,*) to refer to cases where each party had succeeded as to part.  Such was that case ; the defendant in his plea setting up a right to 6 acres and 2 roods, part of the close, but without specifying what part.  And Littledale, J. adds : " The record would be evidence of a former decision as to part of the place in dispute ; and it may be shown by proof which part that was.  If this imposes any hardship on the plaintiff it may well be said on the other hand, that a defendant is subjected to hardship, because a plaintiff may recover by proving a trespass committed on any part of the close mentioned in the declaration ; since *that declaration, unexplained by evidence, would be conclusive against the defendant afterwards, as to the whole close.*"  If this be not so, no matter what unity of title and possession the plaintiff may have in an entire parcel ; if the plaintiff take an inquest at the circuit, with nominal damages, or the defendant entered upon but one square rod of a lot of 100 acres, the record would be no evidence of his title in one case, and of only one rod (and that upon proof *aliunde*) in the other, against a defendant who had pleaded title in himself to the whole.  If the defendant pleads title to a portion, specifying the quantity but not the location, and succeeds, then perhaps, under the decision in *Bassett* v. *Mitchell,* the *onus* of identifying the parcel in another suit, is upon the plaintiff.  The language used by the judges there, may lead to that inference. Though that question did not arise, as the jury found for the defendant, in *Bassett* v. *Mitchell,* on the issue he had tendered,

and the plaintiff was moving to set aside the verdict and enter a verdict for the plaintiff. All that was said on the question of estoppel was *obiter*. The only difficulty I have on this part of the case, is on account of the plea being, by its terms, a plea of title to only those parts trespassed upon; and may be said to leave any particular portion wholly in doubt, and afford no means of identifying the portions, the title to which was put in issue. But as the defendant failed altogether, thus distinguishing this case from *Bassett* v. *Mitchell*, under the special finding of the jury, that the defendant had title to no part of the close mentioned in the declaration, I think the presumption remains against him. It follows, that if the defendant in this cause proves that the conveyances from Jackson to Root and from Root to him, in terms, include the land described in the declaration in *Jackson* v. *Dunckle*, or that portion of it which must include the land now in question, if included at all; or purport to convey all the right which Jackson had at the time of commencing his suit, and that this land now in suit is a portion of that described in said declaration, *prima facie* the record is evidence that the title to this parcel was in controversy in that suit, and was found not to be in the plaintiff in this suit. And if it be proved that this parcel was the land, for trespass upon which that suit was brought and recovery had, then the record will be conclusive. This is the ground, substantially, upon which the defendant desired the case put. And this, I presume, clearly distinguishes this motion for a new trial from the former one.

But again; I am inclined to think that the learned justice who tried the cause, laid too much stress upon the descriptions in several instruments of conveyance through which the plaintiff deduced title, of the location of Brodt and Livingston's patent. Testimony in relation to the location of that patent was admissible, on the points of acquiescence and adverse possession. But as the Morris patent was first granted, the description of the land in a subsequent patent could be no evidence of the boundaries of the first; nor could the first patentees be affected thereby. And the same rule would apply to a practical loca-

Dunckle *v.* Wiles.

tion by the subsequent patentees. For the purpose of showing acquiescence or adverse possession, the evidence was admissible, but could not affect the claimants of the Morris patent in any other way. (*See the remarks of Chancellor Walworth in Adams* v. *Rockwell*, 16 *Wend.* 299 ; *also Van Wyck* v. *Wright*, 18 *Id.* 157.) The whole charge of the judge is not given ; but I am inclined to the opinion that the qualifications to this part of the case, necessary to prevent a misunderstanding on the part of the jury, were not fully stated. The judge said the evidence would not be conclusive, but laid considerable stress upon the two basswood trees mentioned in Brodt and Livingston's patent, and refused to charge that the descriptions of the land found in the conveyance, proved on the part of the plaintiff, of that patent and of lands in that patent, were not evidence of the boundaries of the Morris patent. On a bill of exceptions, where it appears the charge or omission to charge may have misled the jury, it is error. As to the evidence of the true line it is conflicting, and does not so far preponderate as to require us to interfere upon that ground.

If the patent to Morris and others was granted before the actual location or survey of either of the patents to them, (which perhaps is not to be presumed, as a deficiency in the first, it would seem had been ascertained,) then there are but two natural and actual monuments mentioned in the grant of that one, the lines of which are in question, Indian hill, (now so called,) and the Mohawk River. The starting point had not been ascertained, and the lines are given by courses and distances until the hill is mentioned. This hill must be the north-west corner ; and if it can be ascertained, will control at that point ; and the course southerly from that, should have been run at the proper angles with the cardinal points as given in the grant, without reference to the magnetic pole or the declination of the needle. The judge was not sufficiently explicit on this point, in answer to the request made by the defendant's counsel. However, if there are lines purporting to be the boundary lines between the two patents which are more than a century old, as contended in this case, they bear great intrinsic evidence from their anti-

Dunckle v. Wiles.

quity alone, although their origin and history are now unknown. If there be in truth two, and both very ancient, they in some measure neutralize each other; and if long disputed, are entitled to less consideration. Considering the length of the lines and the uncertainty in the use of the compass, and particularly if they were run by different surveyors under different employers, the discrepancy is not so surprising. But if the question of actual location shall again arise in the cause, these are matters for the consideration of the jury.

WILLARD, J. This was an action of ejectment, brought to recover about seven acres of land, which the plaintiff claims as a part of lot No. 10 in the Livingston patent, in the town of Canajoharie and county of Montgomery. The plaintiff deduced a regular paper title to the premises, traced back to the original patent granted in 1738. The defendant, as one ground of defense, gave in evidence an exemplified copy of a record of judgment of this court in an action of trespass *quare clausum fregit* brought by Samuel Jackson against Adam Dunckle, the now plaintiff, for breaking and entering the close of the plaintiff and cutting timber therein, &c. &c. on the 1st of January, in the year 1827, and on divers other days and times between that day and the commencement of this suit, describing the premises as part of lots No. 4 and 5 in the third mile or tier of lots in a division of large lot No. 6, in a patent granted to Van Horne, Morris and others, and therein describing the premises by metes and bounds, and stating them to be one hundred and five acres. The declaration was in the usual form of a declaration in trespass *quare clausum fregit* for breaking and entering and cutting down and carrying away timber. To this declaration the defendant, Dunckle, pleaded *liberum tenementum*, viz. that at the time when, &c. the said described premises were and still are the soil and freehold of him, the said Adam Dunckle. The plaintiff took issue upon that plea. The issue so joined was tried in Montgomery county, in November, 1833, before Judge Cowen, then circuit judge, when the plaintiff obtained a verdict for six cents damages and the costs, and judgment was per-

fected on the said verdict at the January term, 1834. The defendant deduced a regular paper title to the premises described in the declaration in the said action of trespass, from Samuel Jackson, the plaintiff therein, and proved by a surveyor that the seven acres sought to be recovered in this suit, are embraced within the description of the premises set forth by metes and bounds in the declaration in the aforesaid trespass suit. It was shown that on the trial of the trespass suit before Judge Cowen, in 1833, no witnesses were sworn, but that the defendant permitted the plaintiff to take a verdict for the nominal sum of six cents.

In reference to this branch of the case the counsel for the defendant requested the judge to charge the jury, that if they believed, from the testimony in this cause, that the trespasses for which Jackson prosecuted Adam Dunckle were upon the seven acres in dispute in this suit, then that action was a bar to this action. The court refused so to charge, and the defendant's counsel excepted.

It was proved on this trial, by Matchin, the surveyor, that he surveyed the premises in question, for Jackson, preparatory to the trial of the trespass cause in November, 1833. That it was charged by Jackson at that time, that the suit was brought by him for trespass by Dunckle on the seven acres now in controversy. That Dunckle came out to the premises, while the witness was surveying, and said he had cut timber between the two lines, and that Jackson had sued him for it. The seven acres in question lie between two lines, one of which was claimed by the one party and the other by the other, as the true line. There was, therefore, evidence from which the jury might well have found that the trespasses for which Jackson sued Dunckle in 1833, were committed on the premises now in dispute. The learned judge therefore did not refuse the prayer of the defendant's counsel, upon the ground that there was no testimony authorizing the jury to find that the trespasses for which Dunckle was prosecuted by Jackson, were committed upon the same seven acres, now in dispute ; but upon the ground, that assuming the fact to be so, it formed no bar to the action. If the

judge was wrong in thus refusing to charge, there should be a new trial.

The general rule laid down in Chief Justice Eyre's judgment in the Duchess of Kingston's case is, that the judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea in bar, or, as evidence, conclusive between the same parties upon the same matter directly in question in another court. (1 *Phil. Ev.* 333.) And it is evidence for or against privies in blood, privies in estate, and privies in law, as well as for or against the parties to the suit. (*Id.* 324, 325.) A judgment is final for its own proper purpose and object, and no further. A recovery in any suit, upon issue joined on matter of title, is conclusive upon the subject matter. Thus a finding upon title, in trespass, not only operates as a bar to the future recovery of damages for a trespass founded upon the same injury, but operates also as an estoppel to any action for an injury to the same supposed right of possession. (*Id.* 335.) This is expressly shown in the elaborate opinion of Lord Ellenborough in *Outram* v. *Morewood*, (3 *East*, 346,) where the whole doctrine is fully discussed. As the former judgment can not be pleaded by way of estoppel, in an ejectment suit, the defendant is entitled to the same advantage of it as evidence under the general issue. (*Dame* v. *Wingate*, 12 *N. Hamp. Rep.* 291.) When the evidence of a former recovery is properly received under the general issue, it is just as conclusive as though the matter had been specially pleaded by way of estoppel. (*Per Bronson, J. in Young* v. *Rummell*, 2 *Hill*, 480, 481.)

" For example," says Bronson, J. in the same case, " the defendant may give the judgment in evidence under not guilty, in ejectment." "The judgment is only evidence by way of bar when the same matter was directly in question in the former suit. The record must show that the same matter might have been in question on the former trial, and then the fact that it did come in question, may be shown by proof *aliunde*." (*Id.* 481.) The record in the suit between Jackson and Dunckle put in issue the title only. It admitted the possession of Jackson, and the trespass by the defendant. The verdict of the

jury found this title in Jackson. Whether this was founded upon the testimony of witnesses, or the concession of the counsel on the trial, is immaterial. It was proved expressly that the suit was brought for trespasses on the land in question. Hence, there are the requisite averments in the record, and proof *aliunde* in this case to make it conclusive.

There is a difference, it has been said, between *real* actions and *personal* actions, as to the conclusiveness of a judgment. In a personal action, as debt, account, &c. the bar is perpetual; for the plaintiff can not have an action of a higher nature, but has no remedy except by error. But if a plaintiff be barred in a real action by judgment on a verdict, demurrer, confession, &c. yet he may have an action of a higher nature, and try the same right again; because it concerns the freehold and inheritance." (*Outram* v. *Morewood*, 3 *East,* 359.) The case of *Wade* v. *Lindsey,* (6 *Metc.* 407,) was decided upon this distinction. It was a writ of entry, averring that the demandant was seised within thirty years, and had been disseised by the tenant. At the trial the demandant gave in evidence a judgment recovered by him in May term, 1839, against the tenant in trespass for breaking and entering the demandant's premises and pulling down a building thereon, and converting the materials to his own use. In that action the defendant, (tenant in this,) pleaded the general issue, and filed a notice that he also claimed title to the premises described in the plaintiff's declaration. The jury found the defendant guilty, and assessed the damages at sixteen dollars and fifty cents, and they also found that the defendant had no title to the land, and that the soil and freehold were in the plaintiff. The demandant relied upon this judgment, among other things, to establish his title, in this writ of entry. On this branch of the case, Wilde, J. in delivering the judgment of the court, says, "This undoubtedly is good evidence of the demandant's right of possession; but it is no *conclusive* proof of his right of property, or of his title to maintain a writ of entry." Had this action been ejectment to establish a possessory right, instead of a writ of entry brought for the mere right of property, it would follow, from the reason-

Dunckle v. Wiles.

ing of the learned judge, that the former recovery in the suit in trespass, where the title was put in issue and found for the plaintiff, would have been conclusive.

It remains to consider the effect of the revised statutes upon the rights of these parties. By those statutes writs of right were abolished, and the action of ejectment retained, and allowed to be brought in the same cases in which a writ of right might then (1830) be brought by law to recover lands, tenements or hereditaments; (2 R. S. 303;) and by any person claiming an estate therein, in fee or for life, either as heir, devisee or purchaser. As the plaintiff derived his title through the will of his ancestor, bearing date 7th January, 1838, he could not have maintained a writ of right, as the law stood prior to the revised statutes. He must have counted on the seisin of his testator, in order to overreach the recovery of Jackson in the trespass suit. This he could not do by law. (*See Williams* v. *Woodard*, 7 *Wend.* 250.) The present action, therefore, stands on the footing of an ordinary ejectment, and is controlled by the 3d section of the act. (2 R. S. 303.) By that section it is enacted that no person can recover in ejectment, unless he has, at the time of commencing the action, a valid subsisting interest in the premises claimed, and a right to recover the same, or to recover the possession thereof, or of some share, interest or portion thereof, to be proved and established at the trial. The recovery by Jackson in the trespass suit in 1833, shows that the plaintiff has no subsisting title to the possession of the premises.

I am not aware that any thing has been said hitherto which is in conflict with the decision of the supreme court when they sent this cause down to a new trial.(a) It probably did not appear, in the former case, that the suit was for trespasses on the seven acres in question. Beardsley, J. says, in order to make the record an estoppel on the question of title to the seven acres, it must be shown by extrinsic evidence that the title to said seven acres was directly in controversy on the trial of the action of trespass, and that the jury passed upon that question. The record, as has been already said, shows that title was the only

(a) See 5 *Denio*, 296..

question in issue; and the proof was ample for the jury to find that the trespass for which the suit was brought was committed on the seven acres. The jury must, therefore, necessarily have passed upon the question of title; and whether the right of recovery, on that trial, was proved by witnesses, or conceded by the counsel, is unimportant.

I think, therefore, the learned judge erred in not charging as requested. And for this error there should be a new trial, with costs to abide the event.

PAIGE, J. concurred.

New trial granted.

SAME TERM.    *Before the same Justices.*