Quackenbush *v.* Ehle.

---

Same Term. *Before the same Justices.*

Quackenbush *vs.* Ehle, ex'r of Quackenbush.

The report of a referee is like the verdict of a jury. It is conclusive, upon questions of fact, where there is no decided preponderance of the evidence in favor of the party against whom it is made.

Where a father promised his son that if he would build a house, upon the farm of the former, for two families, and would stay and work such farm during the life of the father, he would devise the farm to the son, by way of compensation for his services; and the son, relying upon such promise, built a house, and remained on the farm, and worked it, for 22 years, and until his father ejected him therefrom; but the father refused to make him any compensation, and died without devising the farm to him; *Held* that an action lay, against the executor of the father, by the son, to recover the value of his services; and that he was entitled to recover on the common count for work and labor.

*Held also* that the demand of the son, for compensation, was not due until the death of his father; and that if he brought his suit within six years from that time it was sufficient.

*Held further,* that the case was not within the statute of frauds.

A former suit between the same parties is no bar to a second action for the same demand, where the validity of the plaintiff's claim was not passed upon in the former suit; the referees in that suit reporting against the plaintiff expressly upon the ground that his action was prematurely brought.

MOTION to set aside the report of a referee. The action was assumpsit. The declaration contained one count on a special contract, in which the plaintiff alleged that the defendant's testator, who was his father, in consideration that the plaintiff would remain with him and aid him in the cultivation of his farm, and would otherwise devote himself to the business of the testator during the testator's life, promised that he would make arrangements, by will or otherwise, that the plaintiff should, at the testator's decease, have the testator's farm, &c. averring performance, and breach, &c. The declaration also contained the common counts for work, labor, &c. The defendant pleaded the general issue and the statute of limitations; and gave notice of a former suit, in bar, and a set-off. The suit was heard by the referee in February, 1848. On the trial before the referee, the plaintiff proved that he worked and managed the testator's farm for him, for about 22 years after he was 21 years of age; and until 1837 or 1838. During this period he erected a dwelling house on the farm, for the testator. While the plaintiff was building the house, the testator said, "the plaintiff builds the house for himself." The house was built at the plaintiff's expense. When he commenced building the house the testator said, he "had told John (the plaintiff) that if he built the house for two families, and stayed and worked the farm he should have the farm, excepting 30 acres," &c. The part that was to go to the plaintiff, was the part on which the house was built. The house was built for two families. After the house was finished, the testator said the plaintiff had built the house, and he meant that the whole farm should go to the plaintiff if he stayed and worked it. In 1837 or 1838 the testator refused to let the plaintiff work the farm any longer, and in Nov. 1841, ejected him from the premises. The testator died in 1843, leaving a will, in which he gave the plaintiff no part of the farm, and only bequeathed to him his blacksmith tools, worth about $10, and $1 in money. The testator, before his death, entered into a contract for the sale of the farm to H. Ehle for $3500. Previous to the death of the testator, the plaintiff commenced a suit against him for work, labor and

services; which suit was referred to referees; who reported against the plaintiff, expressly upon the ground that the action was prematurely brought on the part of the plaintiff, and that therefore there was nothing due from the defendant to the plaintiff in that suit. Judgment was entered up on such report for $113 costs, on the 18th of Oct. 1842. The referee appointed in this cause reported in favor of the plaintiff on the 18th of May, 1848, for $754,40.

*John Cumming*, for the plaintiff.

*T. B. Mitchell*, for the defendant.

*By the Court,* Paige, P. J.   The principal question in this case is whether the services of the plaintiff for his father were to be performed gratuitously, or whether the plaintiff and his father, at the time the services of the former were performed for the latter, intended that the plaintiff should be in some way compensated for such services. This was a pure question of fact for the decision of the referee. He has decided that it was the intention of both parties, at the time the services were rendered, that they should be paid for. The report of a referee is like the verdict of a jury. It is conclusive, where there is no decided preponderance of the evidence in favor of the party against whom it is made. (1 *Barb. Sup. C. Rep.* 235. 2 *Hill*, 578. 3 *Id.* 256. 2 *Wend.* 356.) But, I think that the report of the referee in this case is sustained by the evidence. The plaintiff labored for his father about 22 years, and during that period, erected a house at his own expense, for his father, on the farm of the latter. When the plaintiff commenced building the house, his father told him that if he built the house for two families and stayed and worked the farm, he should have the whole of the farm except 30 acres. And after the house was completed, the plaintiff's father said, that the plaintiff had built the house, and he meant that the whole of the farm should go to him, if he stayed and worked it. The plaintiff built the house for two families, and remained on the farm, and worked it until his

father refused to allow him to work it any longer, and turned him off. It is apparent, from this evidence, that the under-standing of the parties was, that the plaintiff should build the house, and remain on the farm and work it during the life of his father, and that his father, by way of compensation for his services, should devise the whole of the farm to him, or all of it except 30 acres. The plaintiff fulfilled his part of the agree-ment. But his father neglected to give him his farm, or any part of it, as he had agreed to do, and died without making him any compensation whatever, for his services. The plain-tiff's claim for compensation, against the estate of his father, for such services, is founded both in justice and equity. The plaintiff labored for his father during the prime of his life; he increased the value of his farm by erecting a dwelling house upon it; and his father not only neglected to compensate him for such services, but disinherited him. A grosser act of pa-rental injustice cannot well be conceived. There is no foun-dation for the suggestion that the plaintiff's remuneration was to depend wholly on the will and pleasure of his father. The referee, by his report, has negatived this idea. He has found that it was the understanding of the parties that the plaintiff was to be remunerated for his services. The cases of *Jackson* v. *The Executors of Lagrange*, (3 *John.* 199;) of *Patterson* v. *Patterson*, (13 *Id.* 379;) and of *Martin* v. *Wright*, (13 *Wend.* 460,) fully sustain the report of the referee. In *Jackson* v. *The Executors of Lagrange*, Van Ness, J. says, "the ser-vices having been performed for the benefit of the testator, with his knowledge and approbation, the law implies a promise to pay for them; unless the defendant can show that payment was never intended." The plaintiff is entitled to recover on the common count for work and labor. An action lies on the implied assumpsit of the testator to pay for the work and labor performed by the plaintiff for him.

There is no evidence to sustain the defendant's plea of the statute of limitations. The plaintiff's demand for compensa-tion was not due until the death of his father. And the suit was brought within six years from that time. The case of *Pat-*

*terson* v. *Patterson*, (13 *John.* 379,) shows that the plaintiff was not entitled to demand compensation until the death of his father.

The statute of frauds has nothing to do with the case. There was no contract for the sale of lands; nor any agreement that, by its terms, was not to be performed within one year. This suit is not founded on any such contract or agreement.

The former suit is no bar to this action. That suit was commenced before the plaintiff's cause of action accrued. It was prematurely brought. And the report of the referees in that suit was made against the plaintiff, expressly upon that ground. (13 *John.* 379.) The validity of his claim for compensation, for his services performed for the testator, was not passed upon in that suit; and the report of the referees and the judgment in such suit were not upon the points litigated in this suit, and did not necessarily involve their consideration and determination. (10 *Wend.* 84.  8 *Id.* 35.  2 *Hill*, 481.) But the case in this suit, does not show what was the subject matter of the former suit, nor what were the points litigated in that suit. The only evidence it furnishes, is the report of the referees, made in that suit, and that a judgment was entered up upon such report. The pleadings in that suit form no part of the case. And there is no proof of the questions of fact which were put in issue, and tried in that suit.

The referee properly disallowed the costs in the former suit for which the testator obtained judgment, as they were not embraced in the defendant's notice of set-off. The demand claimed to be due on the chattel mortgage given by the plaintiff to his father, was properly rejected. The evidence shows that there was nothing due on it, from the plaintiff.

The motion to set aside the report of the referee must be denied, with costs.