Baker *v.* Rand.

---

## BAKER and others *vs.* RAND and others.

The defendants addressed the following letter to the plaintiffs: "Gents. Whatever goods you sell to A. B. to be sold in our store, we will consent that he may take the money out of our concern to pay for the same," &c. "The said A. shall have the liberty of taking the pay out of our concern as fast as the goods are sold." *Held* that if this was to be considered as a *guaranty,* it was not a continuing guaranty; there being nothing in the letter implying that more than one purchase was contemplated; and that the plaintiffs, if they could recover upon it as a guaranty merely, could recover only the amount of the first purchase made by A. B.

But where, in an action upon the undertaking of the defendants contained in the letter, there was no proof that the letter was used or acted upon by the plaintiffs, or that they sold any goods to A. B., but on the contrary it appeared that the goods sold were charged to the *defendants*, marked with their names, and forwarded to them, and the bills made out in their names; *Held* that the action would not lie.

Baker *v.* Rand.

Where it appears at the trial that in a former suit between the same parties, in a sister state, the plaintiffs might have insisted upon their right to recover, upon every ground on which they rely in the second suit, and the same proof offered in the second suit was properly introduced and considered, upon the merits, in the former suit, and judgment rendered for the defendant, such judgment is a bar to the second suit.

Where a declaration contains special counts, and the common count for goods sold, and the jury find a general verdict for the plaintiff, if it appears that the action upon the common count is barred, by a former suit, the judge may permit the verdict to be entered upon the special counts; provided his notes show that all the evidence was applicable to the special counts.

In such a case, for the purpose of amending the verdict, *it seems* the common count may be treated the same as if it were a bad count.

THIS was a motion to set aside a verdict in favor of the plaintiffs, rendered at the Rensselaer circuit in December, 1849; held by the Hon. I. Harris, one of the justices of this court. The declaration contained counts for goods sold and delivered to one Addison Buck, to be sold in the store of the defendants, on an agreement that he might take money of the defendants, and pay therefor. And that the plaintiffs sold and delivered goods to Buck, who sold them at the store of the defendants, but that the defendants had not paid for the goods or allowed Buck to take money to do so. A similar count averred that the goods were sold and delivered to Buck and by him taken to the defendants' store and sold, but that the defendants refused to let Buck take money and pay for them, or to pay for them themselves, and that a note or memorandum in writing was made of the agreement. Another count averred that the defendants gave Buck a writing as follows, "Pittsford, Aug. 19, 1844. Messrs. Baker & Cameron: Gents. Whatever goods you sell to Addison Buck to be sold in our store, we will consent that he may take the money out of our concern to pay for the same, only you must treat him as well about prices and length of credit as you do your best customers. The said Addison shall have the liberty of taking the pay out of our concern as fast as the goods are sold. Rand & Hendee." And that said instrument was delivered to the plaintiffs, and that relying upon said agreement, the plaintiffs did sell and deliver to Buck,

goods to be sold in the store of the defendants, which were so sold, to the value of $3000, but the defendants refused to let Buck take the money out of their concern to pay for them, though requested to do so by the plaintiff and by said Buck.

Another count, alledging an agreement or guaranty by the defendants to pay the plaintiffs for goods, which the plaintiffs should let Buck have on such terms as Buck and the plaintiffs should agree upon, if Buck did not pay for them; and averring that they let him have the goods and he had not paid for them, and the defendants refused to do so. The common counts for work, labor and materials, goods, wares, and merchandise sold and delivered, and for money had and received, lent, advanced, and paid, laid out and expended; and a count on an account stated, were also inserted.

Rand pleaded the general issue, and also gave notice of a suit brought by the plaintiffs against the defendants in Rutland county court in Vermont, for the same cause of action, and a trial and judgment for the defendants therein. Also notice of set-off.

On the trial, it appeared that the defendants, who were partners, and Buck, lived in Pittsford, Vermont, and the plaintiffs in Troy, New-York. And Buck testified that he drew up the paper and Rand executed it by direction of Hendee, at Buck's solicitation; and the latter sent it to the plaintiffs with a letter from Buck, who in pursuance of it received from the plaintiffs at different times, goods to the amount of over $1300, in nine different parcels, from August, 1844, to March, 1845, all of which were sent to the store of the defendants. The following is a copy of that letter, which was introduced in evidence by the plaintiffs, after being objected to by the defendants : " Gents : In addition to the memorandum that I gave to your Mr. Carpenter when here, I want one box good lump sugar, 3 or 4 cattys of hyson tea and 3 or 4 cattys 3 lb. tea, one bbl. best St. rum; as the most of it is used for medical purposes—the order that Mr. Cameron has was for one hhd. best Porto Rico sugar, one sack spice, one pepper, one bbl. or quarter cask best brandy, and I shall want goods shipped to care of W. Chipman & Co., as well

Baker *v.* Rand.

as marked Rand and Hendee. You have the above guaranty about the goods, and I will pull about the payment. Want you to treat me as well as you can about price, quantity, and length after, and I will endeavor to amply compensate you for waiting on me, and I think I shall be able to get our concern to give their paper, when I can get them together; otherwise you can draw as I said to Mr. C. when here. Please to let me hear from you at as early a date as you can, and make the best trades you can, always shipping to W. C. & Co., and as often as I want goods, will give you orders, only put things right and I will treat you well. And for the old demand, should I fail of payment, will let you have some of the old firm, but calculate to either have them give their paper or pay the drafts. Yours, respectfully,
ADDISON BUCK."

Buck further testified that he had bought goods of his own, previous to that, and put them into the same store, to the amount of over $3000 exclusive of these goods. That sales of the goods in question were made until in March, 1845, when the remainder, together with the goods of the defendants, were seized on an attachment and sold by the sheriff. That he had the control of the business of the store until the levy. That by his direction bills of the goods were made in the name of the plaintiffs to the defendants, and the boxes marked with the names of the defendants, and directed to them; and the goods were also charged to the defendants on the plaintiffs' books. That he received money in the store and sent it to the plaintiffs, but he could not state the amount. That the defendants never took any money out of the store. Up to 1843, the business had been carried on in that store in the name of Strong & Buck, for whom the defendants had become liable as sureties to a large amount. The goods of Strong & Buck were seized on executions in 1843, and the defendants made arrangements and bid them off, and gave their own paper to the creditors of S. & B., in lieu of the liability of S. & B. and the names of the defendants were put over the store door. The attachment for which the goods were seized in March, 1845, was for a debt originally owing by S. & B. but on process against the defendants. He did not know whether

any of the goods bought of the plaintiff were sold on executions issued upon the judgments obtained on the attachments. But if any were left, they went with the defendants' goods. The defendants took the books and accounts that remained in 1845, and kept them. An account was kept against B. in the store. Suits were brought, books kept and notes taken in the defendants' names. The defendant Rand lived close by and was in the store almost every day. In the fall of 1844, Rand purchased and put into the store $1300 worth of goods. The defendants had no other store. After the 19th of August, 1844, the proceeds went to the credit of the defendants.

Mr. Pierpoint testified that on the last of July or the first of August, 1845, he requested Rand to let Buck draw on the concern for the plaintiffs' debt, (and for a debt due Messrs. Britton,) which he refused to pay. On cross-examination, he said he brought suits in the names of the plaintiffs and also in the names of the Messrs. Britton, against the defendants in Vermont, which were referred. The suit in favor of the plaintiffs was for the same bill of goods in controversy here. That Buck swore on those trials, that he was authorized to purchase the goods in the defendants' names and put them in their store, and they were to be paid for out of the store, and the profits to be applied to the payment of debts in which the defendants were sureties. The paper now produced was called for and produced on that trial.

The plaintiffs rested, and the defendants put in evidence a record of judgment rendered in the Rutland county court, Vermont, in favor of the defendants, in a suit brought by the plaintiffs against the defendants. The declaration was for goods sold and delivered by the plaintiffs to the defendants. The cause was referred, and the referees reported in favor of the defendants, and the report was confirmed, and judgment rendered for the defendants, in April, 1846.

Buck, on being recalled, testified that between 19th August, 1844, and 18th April, 1845, he paid into the store $522, which was credited to him, and drew out $430, and that all he paid on old and new debts was done with Rand's assent—but he could

Baker *v.* Rand.

not tell how much. That the old debt to the plaintiffs was about $400, and Rand consented that if he could collect in money, he might pay that. E. Edgerton, Esq. testified that he had charge of the defense of the suits against the defendants, in Vermont, and that these were for the same charges for goods as this. He also testified to statements of Buck as a witness in those suits, that he (Buck) purchased for the defendants, and had written authority from them to do so. And that thereupon the counsel for the plaintiffs there produced the paper signed by the defendants. Buck also stated he had a similar paper signed by the defendants, except that it was not directed to any particular persons. That on these trials a question arose and it was conceded by counsel and determined by the referees, that any claim the plaintiffs had against the defendants which could be brought before the referees on proper pleadings would be allowed to be exhibited, as if the pleadings were amended, &c. And that it was the uniform practice in Vermont, and authorized by their courts, to allow parties before referees to exhibit and litigate any claims which could be brought before them under proper pleadings, for the same subject matter. That the plaintiffs would have been allowed to prove that Buck purchased the goods with the authority of the defendants, or that the defendants guarantied the payment, &c.

The proofs closed, and the defendants moved for a nonsuit, for reasons then specified. But the judge refused the motion, and decided that the defendants were bound to allow Buck the means of paying for the goods in question out of the store as fast as Buck sold them. That if Buck sold the goods, and received funds therefor sufficient to pay the plaintiffs' debt, and disbursed the money by applying the same in payment of the defendants' liabilities, though without the direction or knowledge of the defendants, the latter were liable for the plaintiffs' debt. The defendants excepted, and the judge directed the jury, if they found for the plaintiffs, to find a verdict for $924,19, and they did so. On the application of the plaintiffs' counsel, in the absence of the defendants' counsel and after the jury were discharged, the judge allowed the verdict to be entered on the spe-

cial counts only; the counsel for the plaintiffs having, as they said, never abandoned the common counts. On being informed of this fact the defendants' counsel moved the court to have the verdict entered as found by the jury, which motion was denied.

*W. A. Beach*, for the defendants.

*W. Hay*, for the plaintiffs.

*By the Court*, HAND, J. If the letter addressed to the plaintiffs by the defendants, and upon which the former rely to sustain the first four' counts of the declaration, was intended as a guaranty, (and one count is upon it as such,) it was not a continuing guaranty. A claim against a guarantor is *strictissimi juris;* and the intention should be clear and manifest. (*Dobbin* v. *Bradley*, 17 *Wend.* 425. *Mauran* v. *Bullers*, 16 *Peters*, 537. *Russell* v. *Clark's Ex'rs*, 7 *Cranch*, 69. 3 *Kent*, 124.) In this case the plaintiffs furnished ten different bills of goods, at different times. In several cases in England, some effect seems to have been given to the word "any," in the letter of credit. (*Hitchcock* v. *Humphrey*, 5 *M. & G.* 559. *Mason* v. *Pritchard*, 12 *East*, 227. *Barton* v. *Bennett*, 5 *Camp.* 220. *Merle* v. *Wells*, 2 *Id.* 413. *Mayer* v. *Isaac*, 6 *M. & W.* 605.) But in *Rogers* v. *Warner*, (8 *John.* 119,) the language was, if A. & B. "wish to take goods of you on credit, we are willing to lend our names as security for any amount they may wish;" and it was held not to be a continuing guaranty. (*And see Whitney* v. *Groot*, 24 *Wend.* 82; *Fellows* v. *Prentiss*, 3 *Denio*, 512; *Bovill* v. *Turner*, 2 *Chit. Rep.* 205; *Melville* v. *Hayden*, 3 *B. & Ald.* 593.) If the plain terms of the contract may be fulfilled by being confined to one transaction, courts are not anxious to extend it to others. There should be words showing the contemplation of a continuous supply. In this case there is nothing in the letter implying that more than one purchase was contemplated, or that there was to be a continuing credit. The words "whatever goods you sell to A. B." leave the amount unlimited, but do not necessarily, or impliedly, refer to more than one time.

Baker *v.* Rand.

If this be the true construction, the plaintiffs, if they can recover upon it as a guaranty merely, can recover only the amount of the first purchase. A paper of another date, was spoken of by one of the witnesses, but its contents were not stated; nor is it declared upon in this cause. But is this a guaranty? Admitting that there is sufficient consideration, the agreement, as I understand it, is, that Buck may bring the goods which the plaintiffs may sell to him, into the store of the defendants, of which it appears he had charge; there to be sold out, and as fast as they were sold, Buck was to be allowed to take money, the avails of the business of the defendants there, and pay therefor. If the goods had been purchased under the letter, and brought to the store of the defendants and sold, the latter would have been under obligations to allow Buck to take money to pay for them; even though they had not received from Buck the money, which he had received for the goods. But having done that, they were not liable for the due application of the money by him, to that purpose. If they allowed him to take sufficient money to pay for the goods sold, they were no further responsible. Further than that there would have been no privity of contract between the plaintiffs and the defendants. (*Birckhead* v. *Brown*, 2 *Denio*, 375.) So much they contracted to do; and perhaps on a refusal, they might have been liable for money had and received to the use of the plaintiffs, if they had received the avails of the goods. But this letter does not seem to have been used, or acted on by the plaintiffs. There is no proof that they sold to Buck, but on the contrary, the goods were charged to the defendants, the bills made out in their names, and the goods so marked and forwarded; and it appears that on the trial in Vermont, Buck swore that he had authority to purchase the goods in their names. That was not a sale in pursuance of the terms of the letter. That was necessary to bind the defendants by that instrument. (*Dobbin* v. *Bradley*, *supra*.) If the sale was directly to the defendants; or the transactions between the parties were such that the defendants could be treated as original debtors, clearly the judgment of the county court in Vermont was a bar.

The remaining question to be considered, is, the effect of that judgment. That suit was for goods sold and delivered; and the cause was referred, and tried by referees, who found for the defendants. It does not appear by the record, that the defendants pleaded, but they appeared and defended by attorney. The attorneys for both parties there were examined on the trial of this cause; by which it would seem the cause was tried upon the merits. The declaration in this cause contains counts upon the special contract or writing dated August 19th, 1844; also for goods sold and delivered; and for money and labor; and an account stated. As I understand the evidence, one of the attorneys for the defendants in the suits in Vermont testified that the causes of action now specially declared upon, and all growing out of the same subject matter, could have been proved in that suit; and that upon the question arising upon that trial, it was so conceded by counsel on both sides, and so determined by the referee; and the attorney for the plaintiffs, there, produced the letter dated August 19th, 1844, before the referees, on the call of the defendants. It is well settled, as a general rule, that a judgment of a court, possessing competent jurisdiction, is final between the parties. When a record is evidence, and under what pleadings it may be proved, has often been a mooted question. Notice of this defense was given in this suit; so the last point does not arise.

It has been decided that where, by the pleadings, a claim or defense was inadmissible, even though litigated, the judgment was no bar to such claim or defense, if disallowed. (*Wolfe* v. *Washburn*, 6 *Cowen*, 261. *Beebe* v. *Bull*, 12 *Wend.* 504. *Bull* v. *Hopkins*, 7 *John.* 22. *McGuinty* v. *Herrick*, 5 *Wend.* 245. *Campbell* v. *Butts*, 3 *Comst.* 173. *Quackenbush* v. *Ehle*, 5 *Barb.* 469. *Miller* v. *Manice*, 6 *Hill*, 121.) And so, if the claim was withdrawn; or a part of it did not then exist, or had not accrued. (*Seddon* v. *Tutoss*, 6 *T. R.* 608. *Halsey* v. *Reed*, 9 *Paige*, 446. *Wright* v. *Butler*, 6 *Wend.* 284. *Doty* v *Brown*, 4 *Comst.* 71.) Or was inadmissible under the pleadings, though proved to show malice. (*Campbell* v. *Butts*, *supra.*) But where it could have been allowed, if the proof had

been sufficient, and has been·passed upon on the merits, it is barred, whether allowed or not. (*Mc Guinty* v. *Herrick, supra. Morgan* v. *Plumb,* 9 *Wend.* 287. *Wilder* v. *Case,* 16 *Id.* 583. *Lawrence* v. *Hunt,* 10 *Id.* 80. *Ehle* v. *Bingham,* 7 *Barb.* 494. *McLean* v. *Hugarin,* 13 *John.* 184. *Eastmure* v. *Laws,* 5 *Bing. N. C.* 444. *Dunn* v. *Murray,* 9 *B. & C.* 780.) And it seems that if the matter might have been litigated and decided in the first cause, as a general rule, the judgment will be final. (*Bouchaud* v. *Dias,* 3 *Denio,* 238. *Embury* v. *Conner,* 3 *Comst.* 522, *Jewett, J. Morgan* v. *Plumb, supra. Stafford* v. *Clark, supra. Vail* v. *Vail,* 7 *Barb.* 226. *Gardner* v. *Buckbee,* 3 *Cowen,* 120. *Etheridge* v. *Osborn,* 12 *Wend.* 399. *LeGuen* v. *Gouverneur,* 1 *John. Cas.* 492. *Burt* v. *Sternburgh,* 4 *Cowen,* 559.) Particularly, if the subject matter actually determined or passed upon was a part of the same transaction. (*Id.*) And if it does not appear from the record, that the verdict or judgment was directly upon the point, or matters, which are again attempted to be litigated, that may be shown by proof *aliunde;* provided the pleadings would have justified the evidence of those matters, and the verdict and judgment would necessarily have involved their consideration, had they been proved. (*Nelson, J. in Lawrence* v. *Hunt, supra. Wood* v. *Jackson,* 8 *Wend.* 9. *Young* v. *Black,* 7 *Cranch,* 515. *Ehle* v. *Bingham, supra. Dunckle* v. *Wiles,* 6 *Barb.* 515. 2 *Cowen & Hill's Notes,* 848.) A valid record cannot be contradicted; nor can additions be made thereto. As to foreign judgments, the rule, particularly in relation to contradiction, perhaps, is not settled in England. (2 *Smith's Lead. Cas.* 448, *et seq.* 1 *Greenl. Ev.* § 546, *et seq.*) However, a judgment of a court of one of our sister states, having jurisdiction, is conclusive if there is no fraud. (*Noyes* v. *Butler,* 6 *Barb.* 617, *and cases there cited.* 1 *Greenl. Ev.* § 547. *Manny* v. *Harris,* 2 *John.* 24. 2 *Cowen & Hill's Notes,* 839.) But it may be explained. (*Id.*) There was no objection to the testimony in relation to the law and practice of the courts in Vermont in admitting proof under such a declaration. Had there been, I am inclined to think it would have been admissible. One

---

Baker *v.* Rand.

---

learned in the law, in this state, would be competent to prove what could be shown under the common counts, or general issue; or a notice therewith; under our former system. And an English counsellor at law might testify in respect to their new system. (2 *Cowen & Hill's Notes*. 1142.) From the testimony in this cause, it would seem that the plaintiffs could in the first suit have insisted upon their right to recover upon every ground on which they now rely. If so, it is hardly right that the plaintiffs should there withhold the evidence, if they did so, and then sue again to recover upon the same transaction, and for the same debt or claim. A distinct subject matter was not withdrawn or withheld; for the object in both suits was to compel the defendants to pay for the same goods. As a general rule, if the cause goes off on a technical defect, and not on the merits, the judgment in the first suit is not a bar. (1 *Greenl. Ev.* § 530.) But a party will not be permitted to sue again, because he reserved, or for some cause did not produce a part of his evidence on the first trial. And, of course, if the same proof now offered was properly introduced, and considered upon the merits, that is the end of the matter. And it is hardly necessary to add, that that judgment is a bar to the count in this suit for goods sold, if the trial was on the merits.

On the point of practice, I think the judge was right in permitting the verdict to be entered upon the special counts; if by his notes, it appeared that all the evidence was applicable to the special counts. (*Sayre* v. *Jewett*, 12 *Wend.* 135. 1 *Burr. Pr.* 243. *Chit. Pr.* 922. And see 2 *Saund.* 171 n. 1, a, b, c, d ; *Norris* v. *Durham*, 9 *Cowen*, 151 ; *Empson* v. *Griffin*, 11 *A. & E.* 186 ; *Grant* v. *Astle, Doug.* 729 ; *Eddowes* v. *Hopkins, Id.* 377 ; *Reg.* v. *Virrier*, 12 *A. & E.* 317 ; *Lewin* v. *Edwards*, 9 *M. & W.* 720, *and Am. note.*) If the count for goods sold, had been barred and the others not, for the purpose of amending the verdict, I do not see why it could not be treated the same as if it had been a bad count.

There should be a new trial, costs to abide the event.

[WARREN GENERAL TERM, May 3, 1852. *Willard, Hand, Cady,* and *C. L. Allen,* Justices.]