IN THE MATTER OF THE APPLICATION OF THE NEW YORK, LACKAWANNA AND WESTERN RAILWAY COMPANY, APPELLANT, TO ACQUIRE REAL ESTATE OF THE JUNCTION CANAL AND RAILROAD COMPANY AND OTHERS, RESPONDENT.

*Railroad — taking of land for the purposes of — when the fact that the land is then held for and is adapted to that purpose, may be considered — evidence of such fact — award of commissioners — when it will not be set aside as excessive.*

The respondent is a corporation created by chapter 194 of 1846, and authorized to construct and maintain a canal through the valley of the Chemung river from Elmira to a point near Athens, in Pennsylvania. In pursuance of its charter it acquired the necessary real estate and water privileges, and constructed and maintained the canal until about 1875 when it was discontinued. By its charter it was authorized to sell its real estate and water privileges. In 1866 an act was passed changing the respondent's name and authorizing it to construct, maintain and operate a railroad through the valley where its canal was located. The respondent claimed that by reason of the excavations, embankments, grades, etc., these lands were peculiarly valuable for railroad purposes, and that since the passage of the act of 1866 it had held them for such purposes, intending either to construct a road itself or to sell them together with its rights and franchises to persons desiring so to do. The petitioner, a railroad company, sought to acquire title to a strip of the said lands for the purpose of constructing its road thereon.

*Held,* that it was proper for the respondent to show the purpose and use for which the lands were held, and for the commissioners to allow it the market value of the lands for such purpose and use.

*Matter of Black River, etc., Railroad Company* (9 Hun, 104); *Matter of Boston, Hoosic Tunnel and Western Railway Company* (22 id., 176) distinguished.

The respondent gave evidence tending to show the source of its title to the strip of land; the cost of the right of way; the manner in which the land had been and was then used; the legislative authority for building a railroad; the purposes for which it had held and still held its title; the value of the strip per mile for any feasible purpose; the cost of building walls, etc., for its protection; its adaptability for a railroad route, and other evidence tending to show that the lands were peculiarly adapted to the building of a railroad at moderate expense and in a favorable location.

*Held,* that the evidence was properly received.

The award of commissioners appointed to appraise the damages to be paid for land taken for the purposes of a railroad will not be set aside as excessive unless the excess is plain and palpable upon the evidence.

APPEAL by the New York, Lackawanna and Western Railway Company from an order confirming the appraisal and report of commissioners appointed to ascertain and determine the compensation to be made for certain real estate of the Junction Canal and Railroad Company, taken by the appellant for its roadway, under the provisions of the general railroad act.

Upon the hearing before the commissioners evidence was given to show that the respondent company was created a body corporate by chapter 194 of the Laws of 1846. This act (sec. 8), as amended by chapter 236, Laws of 1853, authorized the company to "construct and forever maintain a canal or slack water navigation" through the valley of the Chemung river so as to form a navigable connection between the Chemung canal at Elmira and the Pennsylvania North Branch canal, at or near Athens, in Pennsylvania. By its charter it was empowered to alien and convey its real estate and water privileges. The company under its charter acquired by purchase and condemnation the fee of the real estate and water privileges required for the work and completed the work necessary for navigation about 1854, a considerable part of which was slack water along the east or north shore of the river protected by slope and rip-rap wall. The real estate forming the prism, banks and structures of the canal is a narrow strip of about 180 acres and eighteen miles, or thereabouts, in length, a small part of which, near the southern terminus in this State, runs across a corner of the State of Pennsylvania. The use of the canal by the public was continued until terminated about 1875 by the close of the Chemung and North Branch canals, both of which have been converted into railway lines.

Chapter 570, Laws of 1866, changed the name of the company to its present title and authorized it to construct, maintain and operate a railroad through the valley in which its canal lands are located.

The company has continued its corporate organization intact, and has not sold or otherwise disposed of its lands or devoted any of them to private use.

The appellant company has condemned and built a double-track road upon parcels of this strip, aggregating fifty-seven acres in quantity and five and fifty-six one hundredth miles in length. The

perfect adaptability of the lands for a railroad route was proven by experts and their unfitness and want of value for any other use. The canal company claimed that from 1866 it had intended to devote these lands to a connecting railroad route, and that it had ever since held and preserved them for that purpose and for no other, intending either to construct a road itself or to sell them together, with its rights and franchises to persons desiring to do so, and that negotiations for pooling and construction were had in 1871 or 1872.

The point of controversy before the commissioners was as to the principle upon which the compensation should be estimated, the railroad company contending in effect that the value of the lands for agricultural purposes, or as they were, lying idle, should prevail, and the canal company insisting that their value for any purpose should determine the measure of indemnity.

*R. T. Turner* and *J. McGuire*, for the appellant.

*E. F. Babcock*, for the respondent.

BOARDMAN, J.:

In condemnation of land to public use the law gives to the owner, by way of compensation, the fair market value of the land taken. This value is not ascertained from any advantages or economies to the party acquiring the land. The injury occasioned to the owner by the taking is the correct rule. Counsel in this case do not differ as to the general rule, but they seriously differ as to its application to the facts proven. The Lackawanna company, which is the petitioner and appellant, insists that the value of the lands taken as agricultural lands should be the limit of allowance, and that the respondent should receive no more than would be allowed for an equal amount of lands taken from adjoining farms. The respondent claims it is the owner of land of some eighteen miles in length by a few rods in width, constituting the line of the old Junction canal between Elmira and the State line, near Athens; that such narrow way, by reason of it excavations, embankments, abutments, stonework, grades, curves, etc., is peculiarly valuable for railroad purposes, and that the respondent has retained the same, since the abandonment of the canal, for railroad purposes only and not as

agricultural lands. The respondent therefore claims to recover from the petitioner the fair market value of the property for railroad purposes, so far as it is taken, and also the diminished value of that which is left by reason of such taking of a portion thereof.

The commissioners have adopted the respondent's theory and allowed by way of compensation for property taken and injury inflicted $56,090. The appeal from such appraisement and report and from the order confirming the same, brings up for review the conflicting claims of the parties. Various exceptions to the admission of evidence are also presented for our consideration.

The respondent gave much evidence touching the source of its title to the strip of land, the cost of the right of way, the manner in which it had been and was then used, the legislative authority for building a railroad thereon, the purpose for which the respondent had held, and still holds its title, the value of such strip of land per mile for any feasible purpose, the building of walls, etc., for its protection, its adaptability for a railroad route, and other evidence, all tending to show that the respondent's lands were peculiarly adapted to the building of a railroad at moderate expense and in favorable location. All such evidence was objected to and admitted subject to petitioner's exception.

If the respondent is entitled to compensation for its lands on the basis of its value for railroad purposes, then, we think, such evidence was admissible, not as a measure of damage, but as tending to show how valuable, or rather how well adapted the land was for railroad purposes in the hands of the owner.

It is conceded that the value of these lands to the petitioner by reason of the economy of adaptation to its uses cannot be made a measure of damage in respondent's favor. All that can be given to respondent is the fair market value of the lands taken and the injury to and diminution in value of other lands of the respondent by reason of such taking. So far there is no controversy.

The lands of respondent are of trivial value for agricultural purposes. They were not retained or used by respondent for such purposes. They had ceased to be of value for canal purposes. By reason of the shape they were only valuable for a road or way. The respondent had retained the control of them for that specific purpose. It had entered into negotiations and procured legislation with refer-

ence to such use. The embankments, cuttings, walls, etc., were to a greater or less extent available for railroad building and would be a source of economy. Why, then, was it not proper to show the purpose and use for which the lands were held, and why was it not proper to show the market value of the lands for such use? Such was held to be the rule in *Matter of New York Central, etc., Co.*, v. *Metropolitan Gas-Light Company* (6 Hun, 149, 154); *Henderson* v. *New York Central Railroad Company* (78 N. Y., 423, 433); *In re Furman Street* (17 Wend., 670); Pierce on Railroads, 217; *C. and S. Railway Company* v. *Longworth* (30 Ohio St., 108, 111); *Welch* v. *Michigan and St. Paul Railroad* (27 Wis., 108); *Queen* v. *Brown* (L. R., Q. B., 630).

The strip of land was practicable and desirable for the route of a railroad. The respondent was holding it for use or for sale for that purpose. The petitioner, in the construction of its railroad, wanted this property. It became simply a question of its value for the use and purpose for which it was owned and held by respondent, and wanted by petitioner. If an unimproved water-power would be destroyed by the location of a railroad, ought not the owner to be compensated therefor? No doubt can exist. The damages would be, not the value of the use to the owner in its unimproved condition, but the market value of the property or water-power, having reference to the use which could reasonably be made of it. The rule should be the same in the present case. Here was a narrow strip of land formerly used as a way and only of value for a way. The owner holds it for such purpose only, expecting the time will presently come when he can utilize it to his own profit or sell it to some one else for such purpose. Why then are not the purposes for which it is held and the uses to which it is adapted, proper elements in its value? We think they are, and that the commissioners did not err in assessing compensation upon the basis of its value for railroad purposes. · It possessed a value for such purposes, but little or none for any other purpose, just as a water-power possesses value for a mill site, but would be otherwise without sensible value. Such is the rule as laid down in *Boom Company* v. *Patterson* (8 Otto [U. S.], 403). The inquiry is, what are the lands worth in market from their availability for valuable uses? The compensation will be made with reference to the uses

for which the lands are suitable, having regard to existing wants or such as may be reasonably expected in the near future.   The case last cited seems to be directly in point and conclusive of the present case.   The property appropriated was almost worthless except for boom purposes.   For such purposes it was very desirable.   Its value for the one purpose to which in time it might be made available, was held to be the proper rule for compensation to the owner.

The cases, *Matter of Black River Railroad* (9 Hun, 104), and *Matter of Boston, Hoosic Tunnel and Western* (22 id., 176), are cited as sustaining the petitioner's position.   But we think such claim is unfounded.   In the first case the owner held his farm for farming purposes only.   The work done by a defunct railroad corporation gave no value to the farm, nor was the taking of such work by a new corporation a source of loss or injury to the owner.   It was of no value to him for railroad purposes, nor was it capable of being used as the line of a road.   It was a mere casual or accidental advantage to the locating road, but no loss or damage to the owner.   So in the second case the land taken by the Hoosic Tunnel Company was of no value to the owner, the Troy and Boston Railroad.   It did not use or want the land for its purposes.   It was in no way harmed by reason of such lands being taken by the Hoosic Company.   In neither case was the owner harmed or entitled to compensation beyond the ordinary value of farm lands.

The use for which the respondent held these lands and the schemes it had in view were not speculative or imaginary, as the appellant contends.   Such use has become real and positive by the act of the appellant in seeking to become possessed of the property for the very purpose contemplated.   The compensation granted by the commissioners was not then awarded for imaginary uses or in satisfaction of speculative schemes.   The use and the purpose were reasonable, natural and feasible, as the event has shown.

The commissioners were justified upon the evidence given, in holding that these lands had a positive and marketable value over and above agricultural lands, that they possessed a value in the hands of the owner for the use and purpose of building of a railroad thereon, because such use might reasonably be expected in the near future.

Much of the evidence offered by the respondent and received under exception, tended to show the availability of the lands for railroad purposes. Some of the evidence so received was of a very questionable character. But we cannot see that the commissioners have erred in the principles which ought to guide them in making their appraisal. So that such technical errors in the admission of evidence ought not to affect the appraisal. (*Troy and Boston R. R. Co.* v. *Lee*, 13 Barb., 160; *New York Cent. R. R. Co.* v. *Marvin*, 11 N. Y., 278.)

Nor will courts set aside an appraisal because the compensation awarded is too great, unless the excess is plain and palpable upon the evidence. (*R. and S. R. R.* v. *Budlong*, 6 How., 467; *In re Furman St.*, 17 Wend., 649.) We cannot say the amount of compensation awarded was excessive. Very likely the members of this court sitting as commissioners would have made it less. But to have examined the lands taken, to have heard and seen the witnesses sworn, to have breathed the atmosphere of the trial are advantages in making a decision which must not be disregarded. These commissioners are gentlemen of experience and learning. Their judgment is entitled to great weight, and we are not, upon the facts proved, at liberty to disregard or reverse it.

We conclude that the order confirming the report and award of the commissioners should be affirmed, with costs.

LEARNED, P. J., and LANDON, J., concurred.

Order affirmed, with ten dollars costs against appellants.