KINGS COUNTY.—HON. W. L. LIVINGSTON, SURRO-
GATE.—October, 1882.

### EAGAN v. KERGILL.

*In the matter of the estate of* BARBARA GRAHAM, *deceased.*

The statute of limitations does not begin to run, against a claim under an alleged agreement for compensation for services rendered to a testator, to be made by a provision in his will, until the testator's death.

The burden of proving payment, by a testator, to one claiming compensation for services rendered in improving real property devised, rests upon the devisee.

Petitioner, testatrix's nephew, claimed a share of the surplus proceeds of a sale of testatrix's real property under an alleged agreement whereby the latter promised to compensate him by a testamentary provision, for valuable services rendered by him during a number of years, in keeping such property in good order and repair. The evidence to prove such an agreement consisted of declarations by testatrix relating to the work which petitioner was doing for her; such as, that she did not know how she could get along without his assistance—she should never forget him—all would be his—she would take nothing with her—he was working for himself—his pay should come from the property—she was sorry to compel him to do certain work, but she did not expect to live long, and the property would of course go to him. Some of such declarations were sworn to have been made in petitioner's presence. His share, as an heir and next of kin of decedent, would have been but a small proportion of her property. Petitioner made no claim for payment during testatrix's lifetime, until he had ascertained that she had made a will leaving all her property to her sister.—

*Held,* sufficient evidence of a mutual understanding between petitioner and his aunt that he was to be compensated, for the services mentioned, through her will.

*Held,* further, that a claim for collecting rents for testatrix was not included in the services described, and was affected by the bar of the statute of limitations.

PETITION by John F. Eagan, a nephew of decedent, for the distribution of the surplus proceeds of a sale of the real property of decedent for the payment of her debts. The claim of petitioner was opposed by Bedelia D. Kergill, sole devisee under decedent's will. The facts appear sufficiently in the opinion.

C. J. PATTERSON, *for petitioner.*

E. L. LOWE, *for sole devisee.*

THE SURROGATE.—The petitioner, who is a nephew and one of the heirs of the deceased, claims that he did work and rendered services to her, for which she agreed to compensate him by a provision for his benefit in her will. The testatrix left all her property to her sister, who does not deny that the petitioner did some work for the deceased, for which he was to receive compensation, but she claims that he has been fully paid therefor. She also sets up the statute of limitations.

The first question to be considered is whether the petitioner was paid for his services by the testatrix, before her death.

Mrs. Kergill, who is the sole devisee under the will, testifies that she saw the testatrix pay the petitioner for his work every time that he did any for her. This is denied by the petitioner, who swears that the testatrix never paid him for his own time and labor, but only sometimes for the materials used by him and the labor of men hired to assist him. Mrs. Kergill and Mrs. Freeman also testify that, on one occasion, shortly before the death of the testator, the petitioner was complaining that he had not been paid for building the house on the rear

of the lot belonging to the testatrix, and that he said nothing about not being paid for other work done by him. This is not an admission on his part that he had been paid for the other work; but it is some proof that he was not paid for his work on the rear house (1 Phill. on Ev., 402, *note 117*). It is true that Mrs. Freeman further says that, very soon after making this claim, he was confronted with the testatrix who said that she had paid him every dollar, and that he hung his head and made no reply; but this is denied by the petitioner. The burden of proving that the petitioner was paid for his work rests on the devisee (McKyring v. Bull, *16 N. Y.*, *297*), and that fact cannot be said to have been proven (Lamb v. Camden & Amboy R. R., *46 N. Y.*, *271;* Wager v. Parmenter, *8 Week. D.*, *146;* New v. Nicoll, *73 N. Y.*, *132*).

The defence of the statute of limitations renders it necessary now to inquire whether the petitioner was to be paid for his work and services by a provision to be made for his benefit in Mrs. Graham's will, because, if so, the statute would not begin to run until Mrs. Graham's death, which only occurred in July, 1878. The rule of law applicable to claims for compensation by will for services rendered to the testator is nowhere better stated than in the case of Shakespeare v. Markham (*10 Hun*, *322*). It is there said: "Where a party renders services to another in the expectation of a legacy, and in sole reliance on the testator's generosity, without any contract, express or implied, that compensation shall be provided for him by will, and the party for whom such services are rendered dies without making such provision, no action lies; but where, from the circumstances

of the case, it is manifest that it was understood by both parties that compensation should be made by will, and none is made, an action lies to recover the value of such services."

The evidence, from which it is claimed that it appears in this case that the testatrix agreed to compensate the petitioner by making provision for him in her will, consists of her declarations, made in conversations relating to the work which the petitioner was doing for her. To the petitioner's wife, she said that she didn't know how she could get along without the assistance of the petitioner; she should never forget him; all that was there should be his; she would take nothing with her; he was working for himself; he knew it was for himself he was doing it; nothing was said about pay but his pay should come from the property. To several others she said that the petitioner was working for himself; that the property would be his.

In speaking to Alderman O'Connell about rebuilding the rear building, she said, in substance, that she was sorry to compel Eagan to do the work, but, having no other friend she could rely on but him, she thought it best to have him do it; that, although it was troublesome to him to do the work, she did not expect to live many years, and the property she possessed would of course go to him.

One witness testified that the testatrix said she would will all her property to the petitioner, in compensation for the work he had done about the place, but the weight of his testimony is considerably impaired by his incredible statement that he had no conversation with the petitioner or his counsel about the case before coming into

court, and never told either of the conversations with the testatrix which he testified to.

George Hughes testified that the testatrix told him, *in the presence of the petitioner* (referring to the work he was doing), that it was for himself that he was doing it, and for him to do it in a proper way. We then have this state of facts on the evidence: that the petitioner, through a number of years, rendered valuable services to his aunt; that his services were not intended to be gratuitous; that his aunt paid some of the expenses that he was put to in doing the work, but did not compensate him for his own time and labor; that although, as heir, the petitioner would only be entitled to a small proportion of his aunt's property, she repeatedly said that he was working for himself, for the property would be his after her death; that it does not appear that he made any claim to be paid for his services during the lifetime of his aunt, until after he had learned that she had made a will leaving all her property to her sister. These facts are sufficient evidence, within the authorities, of a mutual understanding between the petitioner and his aunt that he was to be compensated for his work and services through the will (Jacobson v. Executors of Le Grange, *3 Johns., 199;* McRae v. McRae, *3 Bradf., 199;* Robinson v. Raynor, *28 N. Y., 494;* Quackenbush v. Ehle, *5 Barb., 469*).

The value of the petitioner's services remains to be determined. He has charged $50 a year for seven years, beginning in 1871, for collecting rents as agent. These charges cannot be allowed.

In answer to his own counsel, in explanation of the nature of the services covered by them, he said that

he had collected rents in 1871; not all the rents; could not name any particular person; they lived in the rear house; on one occasion collected $4 or $5; did not know on what floor the person lived from whom he collected rent; could not say how often he went to the rear house that year and collected rent; went several times; about 15 or 20 times; the value of going there 15 or 20 times to collect rent was $5; used to write the receipts and dispossess the tenants; some tenants never got receipts; they were old tenants and did not wish receipts; but all the new ones that came in he wrote receipts for, and all the dispossessing that was done, he did; there was no dispossessing that year.   In 1872, he collected rents in the front house and also in the rear house; the most part was in the rear house; could not say about how much he collected in the year 1872; may have gone to the tenants 25 or 30 times; would go to some parties 5 and 6 times a month; does not believe he collected over $40; did not collect all the rent; the tenants came up stairs with it themselves; no dispossess proceedings were taken by him in 1872; the value of going 25 times to collect $40 was about $7; in 1873, he did, in the line of agency, about the same as before; went to the tenants and tried to get rent; could not tell how much he collected; went to the tenants 20 times; had no knowledge of how many times he did go; could not state more specifically, concerning the year 1874, what he did in collecting rents or going after tenants than he did in former years; could not state anything he did in the year 1875, in the collection of rent; knows he did something of that kind; cannot tell what it was; did not do anything in that year in the way of

dispossessing tenants; did all the writing every year; used to write the receipts for the tenants; did nothing more about the rents in 1876 than he had stated; never took any note of how much money he collected, but knows that he collected money every year; collected some that year. Nothing is said about the year 1877. Evidently, the services of the petitioner in collecting rents for his aunt were of very little value, and would no doubt be amply compensated by allowing him for each year the sum of $7, which he says was the value of his services in collecting the rents for the year 1872, and which no doubt is a very high percentage on the amount of rent collected by him.

But, as these services as agent were not included in the agreement for compensation to the petitioner by the will of the deceased, which agreement related only to the petitioner's labor expended upon the real estate in keeping it in good order and repair, he can only recover for the services rendered since May 5th, 1873, the rest being barred by the statute of limitations.

The petitioner has, in many instances, charged very high for his time, $5 a day, and there are other features of his claim, such as the above mentioned charges of fifty dollars a year for collecting rents, which create the impression that no injustice will be done to him in cutting it down to $700, at which sum it is allowed.

Findings and decree may be settled on two days' notice.